## Richmond

CHARLES WILLIAM CRENSHAW v. COMMONWEALTH OF VIRGINIA

Record No. 771382

RUTH ESTELLE HOFMANN v. COMMONWEALTH OF VIRGINIA

Record No. 771383

MARVIN LEE O'DELL v. COMMONWEALTH OF VIRGINIA

Record No. 771384

RUSSELL WILLIAM SWENOR v. COMMONWEALTH OF VIRGINIA

Record No. 771763

June 9, 1978

Present: All the Justices.

*Henry J. Foresman; Albert M. Orgain, IV (William C. Plott; Foresman & Plott; Sands, Anderson, Marks & Miller,* on brief), for plaintiffs in error. [Records Nos. 771382; 771383; 771384; 771763].

*A.R. Woodroof, Assistant Attorney General (J. Marshall Coleman, Attorney General; R.W. Fahy, Assistant Attorney General,* on brief) for defendant in error. [Records Nos. 771382; 771383; 771384; 771763].

*Amicus Curiae:* John James Jennings and The Association for Protection of Rights of Truckers Engaged in Commercial Transportation *(J. Leyburn Mosby, Jr; Mosby & Jones,* on brief) for plaintiffs in error [Records Nos. 771382; 771383; 771384; 771763].

CARRICO, J., delivered the opinion of the Court.

These four cases, heard together on appeal, all involve convictions under Code § 46.1-198.1.[1] This Code section creates three misdemeanor offenses concerning devices or mechanisms to detect the emission of radio microwaves in the electromagnetic spectrum, which microwaves are employed by police to measure the speed of motor vehicles for law-enforcement purposes. The offenses are (1) the operation of a motor vehicle "equipped with" such a device, (2) the use of such a device upon a motor vehicle, and (3) the sale of any such device.

Each of the four cases involves a "radar detector" observed by police on the dashboard of a motor vehicle operated by a particular appellant. At the time, none of the devices was in use. Hence, we shall consider only the "equipped with" portion of § 46.1-198.1.

The appellants advance numerous arguments to support reversal of their convictions. As a threshold proposition, they contend that, pursuant to the Supremacy Clause of the United States Constitution and by the enactment of the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.,* Congress has preempted the field of radio communication and, therefore, the General Assembly was precluded from enacting § 46.1-198.1.

---

[1] "It shall be unlawful for any person to operate a motor vehicle upon the highways of this State when such vehicle is equipped with any device or mechanism to detect the emission of radio microwaves in the electromagnetic spectrum, which microwaves are employed by police to measure the speed of motor vehicles upon the highways of this State for law-enforcement purposes; it shall be unlawful to use any such device or mechanism upon any such motor vehicle upon the highways; it shall be unlawful to sell any such device or mechanism in this State. Provided, however, that the provisions of this section shall not apply to any receiver of radio waves of any frequency lawfully licensed by any State or federal agency. Any person violating any provision of this section shall be guilty of a misdemeanor and shall, upon conviction thereof, be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars or by confinement in jail for not more than ten days or by both such fine and imprisonment, and any such prohibited device or mechanism shall be forfeited to the Commonwealth by order of the court trying the case, which shall make such disposition of the device or mechanism as it deems proper.

"The presence of any such prohibited device or mechanism in or upon a motor vehicle upon the highways of this State shall constitute prima facie evidence of the violation of this section. The Commonwealth need not prove that the device in question was in an operative condition or being operated.

". . . ."

■ We find this contention without merit. In *Head* v. *New Mexico Board*, 374 U.S. 424, 430 (1963), in upholding state action against a claim of preemption under the Communications Act, the Supreme Court said:

> "In areas of the law not inherently requiring national uniformity, our decisions are clear in requiring that state statutes, othewise valid, must be upheld unless there is found 'such actual conflict between the two schemes of regulation that both cannot stand in the same area, [or] evidence of a congressional design to preempt the field'" (footnote and citation omitted).

See also *Florida Avocado Growers* v. *Paul*, 373 U.S. 132, 142 (1963), and *Kroeger* v. *Stahl*, 248 F.2d 121, 123 (3d Cir. 1957).

Here, we find no conflict between the prohibition of Code § 46.1-198.1 and the federal regulatory system established by the Communications Act. Except for a reference to the general purpose of the Act "to make available, so far as possible, to all the people . . . a rapid, efficient . . . radio communication service," 47 U.S.C. § 151, the appellants have not cited any federal regulation which would even remotely indicate that "both [systems] cannot stand in the same area" or that the regulatory field has been preempted, so that all state action is forbidden.

Indeed, the Federal Communications Commission has provided expressly for radio communication essential to the discharge of non-federal governmental functions, including a public safety service of radio communication essential to official police activities. 47 C.F.R. §§ 89.1 *et seq.* (1976). Accordingly, the Commission has allocated a frequency for police radar. 47 C.F.R. § 89.101 (1976). The known purpose of police radar is to regulate the speed of motor vehicles on the highway. This purpose would be thwarted by the unregulated use of the "radar detectors" encompassed within the prohibition of § 46.1-198.1. Thus, in regulating "radar detectors," § 46.1-198.1, rather than conflicting with the federal regulatory function, actually complements this function by protecting the effectiveness of essential police radio communication.

■ This brings us to the serious question presented by the appellants' contentions, *viz.*, that the second paragraph of § 46.1-198.1 creates a presumption which is violative of due process guarantees. The paragraph in question reads as follows:

> "The presence of any such prohibited device or mechanism in or upon a motor vehicle upon the highways of this State shall

constitute prima facie evidence of the violation of this section. The Commonwealth need not prove that the device in question was in an operative condition or being operated."

In determining the validity of a statute making proof of one fact *prima facie* or presumptive evidence of another fact, a two-fold test is applied: (1) whether there is a natural and rational evidentiary connection between the fact proved and the ultimate fact presumed; and (2) whether the presumption is rebuttable. Unless the evidentiary connection exists and the presumption is rebuttable, the statute cannot be upheld against a due process attack. *Dooley* v. *Commonwealth*, 198 Va. 32, 34, 92 S.E.2d 348, 349-50 (1956); *Burnette* v. *Commonwealth*, 194 Va. 785, 790-91, 75 S.E.2d 482, 485-86 (1953).

■ Here, if we were confronted with only the first sentence of the second paragraph of § 46.1-198.1, we would have no difficulty upholding the statutory presumption, as applied to an "equipped with" violation. Given the single purpose of "radar detectors," we believe there is a natural and rational connection between the proved fact that such a device is present in or upon a motor vehicle and the presumed fact that the vehicle is equipped with the device. And the presumption could be rebutted by evidence that the device was unavailable or inaccessible for use, *e.g.*, that the device was operationally disabled or that it was locked in the trunk of the vehicle.

But the paragraph in question contains a second sentence which states, in part, that the Commonwealth "need not prove that the device in question was in an operative condition." It might be argued that the only effect of this sentence is to make clear that the Commonwealth can established a *prima facie* "equipped with" violation without proof of "operative condition." But this proposition is already made clear by the first sentence. Instead, we believe that the effect of the second sentence, when read with the paragraph as a whole, is to exclude from consideration any evidence concerning "operative condition" and, thus, for all practical purposes, to render irrebuttable the presumption created by the first sentence.

■ Although the Attorney General argues that "operative condition" is not an element of an "equipped with" violation, he agrees that a motor vehicle is "equipped with" a "radar detector" when "such device is present in or upon the motor vehicle and *accessible*

or *available* for use" (emphasis added). Accessibility and availability are close kindreds of "operative condition." And, as indicated earlier when we focused solely upon the first sentence in question, the validity of the disputed presumption depends upon whether it is rebuttable by relevant matters, including inaccessibility and unavailability. Yet, the second sentence renders the presumption virtually irrebuttable by making inaccessibility and unavailability irrelevant to an "equipped with" violation; it would not aid an accused to attempt to rebut the presumption with irrelevant matters.

■ Read as a whole, therefore, the second paragraph of § 46.1-198.1 permits an "equipped with" conviction upon proof of the mere presence of a "radar detector" in or upon a motor vehicle, despite credible evidence that the device was inaccessible or unavailable for use.[2] Thus, the statute permits the presumption in question to be applied as a purely arbitrary mandate, violative of due process. Accordingly, we cannot allow the presumption to stand.

■ With the invalid presumption excised, the substantive offenses created by § 46.1-198.1 remain intact. *Sharp v. Commonwealth*, 213 Va. 269, 272, 192 S.E.2d 217, 219 (1972). But, because the convictions in the present cases may have been based in whole or in part upon the invalid presumption, we must reverse the several judgments appealed from and dismiss the misdemeanor charges brought against the appellants.

*Reversed and dismissed.*

---

[2] At its 1978 session, the General Assembly amended the second paragraph of § 46.1-198.1 and added a new paragraph, as follows:

"Except as provided under subsection B. of this section, the presence of any such prohibited device or mechanism in or upon a motor vehicle upon the highways of this State shall constitute prima facie evidence of the violation of this section. The Commonwealth need not prove that the device in question was in an operative condition or being operated.

"B. No person shall be guilty of a violation of this section when the device or mechanism in question, at the time of the alleged offense, had no power source and was not readily accessible for use by the driver or any passenger in the vehicle." Acts 1978, chs. 87, 91.

We express no opinion upon the effect of these amendments.