PEOPLE v GILBERT (ON REHEARING)

Docket No. 78-383. Submitted October 10, 1978, at Detroit.—Decided
      November 5, 1979. Leave to appeal applied for.

      Daniel C. Gilbert equipped his automobile with a radar detector.
      He was charged with equipping his automobile with a radio
      receiver set capable of receiving police signals. At a hearing on
      Gilbert's motion to dismiss, the Troy Municipal Court con-
      cluded that radar detectors were radio receiving devices but
      dismissed the charge on the basis that the Legislature did not
      intend the statute under which Gilbert was charged to apply to
      radar detectors. The prosecutor appealed to the Oakland Cir-
      cuit Court. Robert L. Templin, J., vacated the dismissal and
      ordered the case remanded for trial. Defendant appealed by
      leave granted and the Court of Appeals held that a radar
      detector was a radio receiving set within the purview of the
      statute, that the statute had not been preempted by Federal
      law, that the frequencies in question had been assigned by the
      Federal Communications Commission to the Police Radio Ser-
      vice for radar use and that the fact that the FCC had also
      assigned the frequencies for other uses did not affect the
      applicability of the statute. The Court then dismissed the
      charges against defendant because he had no notice that the
      statute applied to radar detectors. (88 Mich App 764 [1979]).
      The Court denied a defense application for rehearing, then, on
      its own motion, ordered rehearing to consider what effect the
      FCC's new regulatory scheme, effective January 2, 1979, had on
      the Court's original opinion. *Held:*

          Even though the frequencies are no longer assigned to the
      Police Radio Service, they are still assigned by the FCC for
      police purposes.

          88 Mich App 724 (1979) is affirmed.

1. STATUTES — CRIMINAL LAW — RADAR DETECTORS.

      A radar detector is a "radio receiving set" which falls within the
      purview of the statute which prohibits the use in a vehicle of a

REFERENCES FOR POINTS IN HEADNOTES
[1] [No Reference]
[2] [No Reference]

radio receiving set that will receive signals sent on those frequencies allocated for police purposes (MCL 750.508; MSA 28.776).

2. CRIMINAL LAW — STATUTES — RADIO RECEIVERS — FREQUENCY ALLOCATIONS.

The statute that prohibits use in a vehicle of a radio receiving set that receives signals on a frequency assigned to police does not require that those frequencies be assigned exclusively to the police; therefore, the fact that those frequencies are also allocated for other use does not affect the applicability of the statute (MCL 750.508; MSA 28.776).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Michael J. Modelski,* Assistant Prosecuting Attorney, for the people.

*Bacalis & Associates, P.C.,* for defendant.

Before: DANHOF, C.J., and BASHARA and CYNAR, JJ.

CYNAR, J. On March 6, 1979, this Court made a determination that charges were properly brought against defendant for equipping his car on December 3, 1976, with a radar detector, more commonly known as a "fuzzbuster", in violation of MCL 750.508; MSA 28.776.[1] *People v Gilbert,* 88 Mich App 764; 279 NW2d 546 (1979).

---

[1] This provision, the statute under which defendant was charged, states:

"Any person who shall equip a vehicle with a radio receiving set that will receive signals sent on frequencies assigned by the federal communications commission of the United States of America for police purposes, or use the same in this state unless such vehicle is used or owned by a peace officer or a bona fide amateur radio operator holding a conditional, general, advanced or extra class amateur license issued by the federal communications commission, without first securing a permit so to do from the commissioner of the Michigan state police upon such application as he may prescribe, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail not more than 1 year or by a fine of not more than $500.00 or by both such fine and imprisonment in the discretion of the court."

An application for rehearing filed by defendant-appellant was denied May 8, 1979. However, on June 29, 1979, this Court, on its on motion, ordered the application for rehearing granted, only to consider what effect, if any, the Federal Communication Commission's (FCC) regulatory scheme as amended effective January 2, 1979, has on this Court's original opinion.

The Federal Communications Act of 1934[2] vested authority in the FCC to regulate radio transmissions and to issue licenses for radio stations and further gave the FCC power to enact rules in order to implement a regulatory scheme.

Part 89 of these rules, entitled Public Safety Radio Service, was in effect at the time defendant was charged. The purpose of the rules was declared to be "to provide a service of radio communication essential either to the discharge of non-Federal governmental functions or to the alleviation of an emergency endangering life or property". See 47 CFR 89.1(b) (1977).

Under 47 CFR 2.1 (1977) and 47 CFR 2.105-2.106 (1977), the frequency range from 10,500 to 10,550 MHz has been assigned for radar use. Further, under 47 CFR 89.101 (1977), as in effect at the time defendant was charged, the same frequency range was expressly, though not exclusively, assigned to the Police Radio Service, a subpart of the Public Safety Radio Service. See also 47 CFR 89.309 (1977).

Based upon the above provisions, this Court concluded that, since the above megahertz frequency range was "assigned for police purposes", any radar detector or "fuzzbuster" which would monitor and receive radio signals within such

---

[2] 47 USC 151 *et seq.*

frequency range was a radio receiving set within the meaning of MCL 750.508, and any person who equipped a vehicle with the same would be subject to the proscriptions and sanctions of that statute.

However, effective January 2, 1979, Chapter I of Title 47 of the Code of Federal Regulations was amended by deleting Parts 89, 91, and 93 of the FCC rules and regulations, and by substituting therefor Part 90-denominated Private Land Mobile Radio Services.[3]

Under Subpart F, the Radiolocation Service, one section has been devoted to establishing requirements for eligibility for authorizations to operate radiolocation devices. This section, § 90.103, reads in relevant part:

"(a) *Eligibility.* The following persons are eligible for authorizations in the Radiolocation Service to operate stations to determine distance, direction, speed, or position by means of radiolocation devices, for purposes other than navigation:

"(1) Any person engaged in a commercial, industrial, scientific, educational, or local government activity.

"(2) A corporation or association that will furnish radiolocation service to other persons.

"(3) A corporation that will furnish a nonprofit radio communication service to its parent corporation, to another subsidiary of the same parent, or to its own

---

[3] Subpart A of Part 90 was labeled General Information. Subpart B, Public Safety Radio Services is subdivided further into: (1) Local government radio service; (2) Police radio service; (3) Fire radio service; (4) Highway maintenance radio service; and (5) Forestry-conservation radio service. Subpart C is captioned Special Emergency Radio Service, Subpart D, Industrial Radio Services, and Subpart E, Land Transportation Radio Services. Each subpart additionally identifies specific services within the general categories.

Finally, Subpart F is entitled Radiolocation Service, the scope of which is to accommodate "the use of radio methods for the determination of direction, distance, speed, or position for purposes other than navigation". 43 Fed Reg 54,829 (1978) (to be codified in 47 CFR 90.101).

subsidiary where the party to be served is regularly engaged in any of the eligibility activities set forth in this paragraph. * * *"

Later in the same section, the frequency range in question, 10,500 to 10,550 MHz, is deemed available for assignment to stations in the Radiolocation service. Nowhere in this section is an assignment of this range made to the Police Radio Service, either exclusively or otherwise. See § 90.103(b). Nor does Subpart B of Part 90, Public Safety Radio Services, refer to said range of frequencies in any of its subsections.

However, this does not end our inquiry. We must also examine the FCC's licensing scheme to determine whether that impacts upon our decision. According to testimony given at trial by a radar technician, under the FCC licensing scheme, the frequency of 10,525 MHz is reserved for police purposes. At the time a police department purchases a radar unit, they submit a license application to the FCC, and are granted the same without delay. Under this licensing scheme, the license indicates that the frequency in which the radar unit operates, *i.e.,* 10,525 MHz, is assigned for police radar purposes.

Although Part 90 no longer mentions the Police Radio Service, the licensing scheme of the FCC does not appear to be affected by the FCC's amendment of the relevant rules and regulations, at least on the record before us. As such, we find that under MCL 750.508, the frequency of 10,525 MHz, at which radar devices operate, is still assigned by the FCC for police purposes. Accordingly, we find no grounds for disturbing the result reached in our original opinion in this matter.

88 Mich App 764 (1979) is affirmed.