**BRYANT RADIO SUPPLY, INC. and Robert L. Bryant, Plaintiffs,**

**Richard A. Westbrook and Big Wally's, Inc., Intervening Plaintiffs,**

v.

**Colonel D. M. SLANE in his official capacity as Superintendent of the Department of Virginia State Police, Defendant.**

Civ. A. No. 79–0211(R).

United States District Court,
W. D. Virginia,
Roanoke Division.

Feb. 11, 1981.

David B. Hart, Smeltzer & Hart, Roanoke, Va., Foresman & Plott, Lexington, Va., Fletcher, Heald & Hildreth, Washington, D. C., for plaintiffs.

Martin A. Donlan, Jr., Asst. Atty. Gen., Richmond, Va., David H. Adams, Nathaniel Beaman, IV, Taylor, Walker & Adams, Norfolk, Va., for Westbrook and Big Wally's, Inc.

## MEMORANDUM OPINION

TURK, Chief Judge.

This is an action brought pursuant to 28 U.S.C. § 2201 *et seq.* and 42 U.S.C. § 1983

challenging the constitutionality of Va.Code Ann. § 46.1–198.1[1] which prohibits the sale of radar detection devices as well as their usage on motor vehicles within Virginia. Plaintiff, Bryant Radio Supply, Inc., a Virginia corporation engaged in the business of selling electronic devices and appliances, alleges that it "is being irreparably harmed by the loss of revenue" resulting from its inability to sell radar detection devices in Virginia. Plaintiff, Robert L. Bryant, a licensed motor vehicle operator in Virginia, alleges that § 46.1–198.1 prevents him from checking the accuracy of police radar devices and thus denies his "rights to fundamental due process of law." Naming as defendant the Superintendent of the Virginia State Police, who, it is alleged, "has the responsibility of enforcing motor vehicle laws in the state ...," plaintiff seeks a declaratory judgment that § 46.1–198.1 is unconstitutional under the Supremacy Clause—U.S.Const., Art. VI, cl. 2—because the Communications Act of 1934, Title 47 U.S.C. § 151 *et seq.* and implementing regulations pre-empt the field, and is unconstitutional as an impermissible burden on interstate commerce in violation of art. I, § 8, cl. 3, the Commerce Clause. Joining the plaintiffs as intervenors are Big Wally's, Inc., a Virginia corporation engaged in the business of selling electronic devices and Richard A. Westbrook, a sales clerk for that company in Norfolk, Virginia, who was convicted in the Circuit Court for the City of Norfolk of selling a radar detection device in violation of the challenged statute.

### I.

Initially, the plaintiffs contend that the Communications Act of 1934, 47 U.S.C. § 151 *et seq.*, which created the Federal Communications Commission (FCC) and spawned a comprehensive regulatory scheme, evidences a congressional intent to "occupy the field" of radio reception. As such, it is argued, any attempt by Virginia to legislate in the field is necessarily preempted by federal law which is given dominance via the Supremacy Clause. In support of their claim that Congress has preempted the field of radio reception, the plaintiff's point, variously, to the legislative history of the Communications Act, to the pervasiveness of its regulatory scheme, and to 47 U.S.C. § 605 which is said to be the "exclusive limitation on [radio] reception." In response, the defendant asserts that § 46.1–198.1 of the Virginia Code violates neither the language nor the policy of federal communications law, and that it represents a valid exercise of the state's police powers.

In *Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 209, 5 L.Ed. 302 (1824), Chief Justice Marshall noted that a state statute, "though enacted in the exercise of powers not controverted, must yield to" an act of Congress with which it conflicts. In evaluating patterns of statutory interaction, the Supreme Court has traditionally declared that whether challenged state action has been preempted turns on whether or not it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). The court, in *Pennsylvania v. Nelson,* 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956), enunciated a three-pronged inquiry to ascertain preemption parameters: 1) pervasiveness of the federal regulatory scheme; 2) federal occupation of the field

---

1. Va.Code Ann. § 46.1–198.1 (Repl.Vol.1980) states, in pertinent part, as follows:

It shall be unlawful for any person to operate a motor vehicle upon the highways of this State when such vehicle is equipped with any device or mechanism to detect the emission of radio microwaves in the electromagnetic spectrum, which microwaves are employed by police to measure the speed of motor vehicles upon the highways of this State for law-enforcement purposes; it shall be unlawful to use any such device or mechanism upon any such motor vehicle upon the high-

ways; it shall be unlawful to sell any such device or mechanism in this State. Provided, however, that the provisions of this section shall not apply to any receiver of radio waves utilized for lawful purposes to receive any signal from a frequency lawfully licensed by any State or federal agency. Any person violating any provision of this section shall be guilty of a traffic infraction pursuant to §§ 16.1–69.40:1 and 19.2–254.1 and shall, upon conviction thereof, be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars.

as necessitated by the need for national uniformity; and 3) danger of conflict between state laws and the administration of the federal program.

Recently, the Supreme Court has invoked a strict interpretation of the concept of conflict, refusing either to presume or infer pre-emptive intent.[2] In *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978), for instance, the Court noted: "[W]hen a State's exercise of its police power is challenged under the Supremacy Clause, 'we start with the assumption that the historic police powers of the state were not to be superseded by the Federal Act *unless that was the clear and manifest purpose of Congress'* ". (emphasis added). The Court went on to note that, absent evidence of such a "clear and manifest purpose," the only Supremacy Clause question is whether an actual conflict exists:

> Even if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a valid federal statute. A conflict will be found "when compliance with both federal and state regulations is a physical impossibility ...," [citation omitted], or where the State "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." [citation omitted].

*Id.* at 158, 98 S.Ct. at 994.

■ Consequently, under current standards, a state statute is to be held violative of the Supremacy Clause only when Congress has clearly manifested an intent that its legislation be given pre-emptive effect, or when an actual conflict exists between the state and federal statutory schemes. Under such a stringent standard, this court does not find § 46.1–198.1 to have been pre-empted by federal law.

The stated, general purpose of the Communications Act is "to make available, so far as possible, to all the people ... a rapid, efficient ... radio communication service...." 47 U.S.C. § 151. Because "radio communication" is subsequently defined as "the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities, apparatus, and service (among other things, *the receipt*, forwarding, and delivery of communications) incidental to such transmission," 47 U.S.C. § 153(b) (emphasis added), plaintiffs contend that this evinces a Congressional intent that all radio reception fall within the "broad sweep of the Communications Act." The plaintiffs then quote portions of the legislative history of the Radio Act of 1927 in which a desire to keep "radio reception free from government restraint" was voiced by the then Chairman of the Senate Commerce Committee.

The court finds the plaintiffs' argument for pre-emption unpersuasive. The Radio Act of 1927 was enacted to enhance and promote the communicative aspects of radio transmission. Prior to 1927, the allocation of radio frequencies was left entirely to the private sector, resulting in a chaotic "cacaphony [sic] of competing voices, none of which could be ... heard," *Red Lion Broadcasting Co., Inc. v. FCC*, 395 U.S. 367, 376, 89 S.Ct. 1794, 1799, 23 L.Ed.2d 371 (1969). Therefore, Congress passed the Radio Act of 1927, creating the Federal Radio Commission with power to allocate licenses in a manner responsive to the public "convenience, interest, or necessity." *Id.* at 377, 89 S.Ct. at 1799. Today the FCC, which evolved from the Federal Radio Commission, has been given a similar Congressional mandate under 47 U.S.C. § 303. Title 47 U.S.C. § 153(b), cited by the plaintiffs, specifically refers to "the receipt ... of [radio] communications," and § 151 states that the purpose of the Act is to regulate "commerce in communication." Since "communication" is commonly defined as "a) a giving or exchanging of information, signals, or messages by talk, gestures, writing, etc. b) the information, message, etc.,"[3] only a strained construction of 47 U.S.C. § 151 *et seq.* would enable this court to conclude that the use of radar detection devices comes within its parameters.

**2.** *See* Nowak, Rotunda and Young, Handbook on Constitutional Law 270 (1978).

**3.** Webster's New World Dictionary (1972).

Plaintiffs further suggest that the mere pervasiveness of the Communications Act and its implementing regulations reveals a congressional intent to pre-empt the field of radio reception. Although once deemed a powerful indicia of pre-emptive intent, comprehensive legislation is no longer given such a dispositive effect, *see, e. g., New York Department of Social Services v. Dublino*, 413 U.S. 405, 415, 93 S.Ct. 2507, 2514, 37 L.Ed.2d 698 (1973), absent other evidence of clear congressional intent.

Plaintiffs also argue that there exists an actual conflict between federal communications law and § 46.1–198.1 since 47 U.S.C. § 605 allegedly deals "with the exact area which the state now seeks to regulate." Title 47 U.S.C. § 605 states in pertinent part: "No person receiving or assisting in receiving ... any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof ... to any person other than the addressee, his agent, or attorney ...." Clearly § 605 was enacted to protect the rights of privacy of senders and recipients of interstate and foreign *communications*, as that term is commonly defined, and was not meant to regulate the detection of radio transmissions. Since compliance with both the state and federal statute is not a physical impossibility, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963), nor does § 46.1–198.1 stand as "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Jones v. Rath Packing Co.*, 430 U.S. 519, 540–41, 97 S.Ct. 1305, 1317, 51 L.Ed.2d 604 (1977), this court finds no actual conflict between the challenged statute and federal communications law.

■ Consequently, there being neither an actual conflict between § 46.1–198.1 and the Communications Act, nor evidence of a "clear and manifest purpose of Congress" to pre-empt the field of radio reception, the challenged Virginia statute is not found to violate the Supremacy Clause.

## II.

■ Secondly, the plaintiffs argue that § 46.1–198.1 violates the commerce clause because it places an unconstitutional burden on interstate commerce. That the challenged statute affects interstate commerce is beyond question. Radar detection devices are legally manufactured outside of Virginia and hence are articles of interstate commerce. Because the challenged statute prohibits their sale in Virginia, it affects interstate commerce.

In *Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 U.S. 366, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976), the Supreme Court enunciated the test for determining the validity of state statutes affecting interstate commerce:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Id.* at 371–72, 96 S.Ct. at 928 (citations and footnote omitted).

Under *Cottrell*, the first inquiry is to determine whether the challenged statute effectuates "a legitimate local purpose." In *Crenshaw v. Commonwealth*, 219 Va. 38, 245 S.E.2d 243 (1978), the Virginia Supreme Court stated:

> The known purpose of police radar is to regulate the speed of motor vehicles on the highway. This purpose would be thwarted by the unregulated use of the "radar detectors" encompassed within the prohibition of § 46.1–198.1. Thus, in regulating "radar detectors," § 46.1–198.1 ... [protects] the effectiveness of essential police radio communication.

245 S.E.2d at 246. Since the challenged statute was enacted to prevent motorists

from circumventing state and local traffic laws, there is little doubt that it effectuates a legitimate local purpose.

Finally, it is important to ascertain whether "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits ...." *Great Atlantic & Pacific Tea Co. v. Cottrell, supra,* 424 U.S. at 371–72, 96 S.Ct. at 927–928. *See also, Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978). The extent of the burden that will be tolerated is said to depend on "the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

Although the plaintiffs assert that "a variety of other more reliable and, thus, less burdensome means are available to the Commonwealth to enforce its traffic laws," they decline to enumerate them. On the other hand, the defendant has submitted the affidavit of George W. Kellam, Jr., the captain in charge of communications for the Virginia Department of State Police, who states that radar is the principal authorized means for measuring the speed of motor vehicles, and that the only alternate method is "significantly less efficient." [4]

In commenting upon the Supreme Court's balancing process, one author has noted:

> Although the distinction between "police regulation" and "regulation of interstate commerce" has long since been rejected as too wooden to be of much help in the actual decision of particular cases, it survives as a generally accurate retrospective determinant of the relative weights imputed by the Supreme Court to the interests asserted to justify state regulations. State regulations seemingly aimed at furthering public health or safety ... are less likely to be perceived as "undue burdens on interstate commerce"

than are state regulations evidently seeking to maximize the profits of local business.

Tribe, American Constitutional Law § 6–12 (1978). This court finds that § 46.1–198.1 furthers a significant state interest in the health or safety of Virginia's motorists and that its impact on interstate commerce, while existent, is not unduly burdensome. Accordingly, the statute does not violate the commerce clause.

### III.

Lastly, the plaintiffs challenge the constitutionality of § 46.1–198.1 on the ground that it is so vague and ambiguous as to be violative of the due process clause of the Fourteenth Amendment. In their complaint, however, the plaintiffs clearly state that they wish to sell or use "[r]adar detection devices [which] are radio receivers tuned in to receive radio waves transmitted by radio location devices, or radar." They further contend that the use of such devices would enable individuals to check the accuracy of police radar equipment. In light of the plaintiffs' complaint, and because of the wording of § 46.1–198.1, "it is all but frivolous to suggest that the section fails to give adequate warning of what activities it proscribes or fails to set out 'explicit standards' for those who must apply it." *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973). Accordingly, § 46.1–198.1 is not found to be unconstitutionally vague.

For the above reasons, the defendant's motion for summary judgment is hereby granted.

---

4. In his affidavit, Captain George W. Kellam, Jr. of the Virginia State Police states that from January 1, 1979 until August 11, 1979 there were 133,015 arrests in Virginia for violation of the state's speed limits. Of these arrests, 115,-195 resulted from the use of radar and the remaining 17,820 from the use of the "pace method," which consists of following a motorist at a uniform distance and then measuring his rate of speed from the speedometer of the following police vehicle.