**Thomas G. SMITH, et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 80–300.**

District of Columbia Court of Appeals.

Argued Jan. 28, 1981.

Decided Sept. 25, 1981.

---

Mark H. Kaufman and Robert L. Pettit, Washington, D.C., for appellants.

Philip T. Van Zile, III, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before KERN and NEBEKER, Associate Judges, and GALLAGHER, Associate Judge, Retired.

NEBEKER, Associate Judge:

These cases consolidated for both trial and appeal, challenge the constitutionality of a police regulation prohibiting the possession of a police radar detector in a motor vehicle.[1] In some cases, the device was mounted for use; in others, a police officer discovered the unused device on the floor of the car. Appellants' consolidated motion to dismiss the informations against them on constitutional grounds was denied by the Honorable James A. Washington, Jr. in an unpublished opinion and order on which we will rely in several instances. Appellants were subsequently found guilty and forfeit-

ed their collateral as punishment. Appellants now contend that the police regulation violates the supremacy clause, the commerce clause, and the due process clause of the United States Constitution. We affirm.

I

■■■ Appellants' initial argument is that the regulation of radar detectors by the states is preempted by the Federal Communications Act of 1934, 47 U.S.C. § 151 *et seq.* (1976).[2] When a state's exercise of its police power is challenged under the supremacy clause, a court must begin with "the assumption that the historic police powers . . . were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947), *quoted in Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). However, where Congress by statute has designedly prohibited[3]

1. D.C.Pol.Reg.: Art. 25, § 16 provides:

No person shall, in the District of Columbia, sell or offer for sale, or use or have in his possession in a motor vehicle, any device designed to detect or counteract police radar. This section shall not apply to any vehicle or equipment used by the Armed Forces of the United States.

This regulation is a modification of a substantially similar regulation adopted by the District of Columbia Commissioners in 1961. The Commissioners adopted the regulation under their authority, vested in them by Congress, to "make" and enforce all such reasonable and usual police regulations . . . as they may deem necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of property." *See* D.C.Code 1973, § 1–226.

2. The District of Columbia is treated as a state for purposes of the Federal Communications Act. *See* 47 U.S.C. § 301 (1976).

3. Appellants suggest that Congress preempts state regulation by implication where the pervasiveness of the federal scheme or the character of the regulated field suggests a congressional intent to occupy the field. *See Pennsylvania v. Nelson*, 350 U.S. 497, 504, 76 S.Ct. 477, 481, 100 L.Ed. 640 (1956); *Rice v. Santa Fe Elevator Corp., supra*, 331 U.S. at 230, 67 S.Ct. at 1152; *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). This

approach to preemption issues is disfavored in recent Supreme Court cases. *See Philadelphia v. New Jersey*, 437 U.S. 617, 620 n.4, 98 S.Ct. 2531, 2533 n.4, 57 L.Ed.2d 475 (1978); *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 132, 98 S.Ct. 2207, 2217, 57 L.Ed.2d 91 (1978); *Sears, Roebuck & Co. v. San Diego County Dist. Counsel of Carpenters*, 436 U.S. 180, 203–07, 98 S.Ct. 1745, 1760–62, 56 L.Ed.2d 209 (1978).

Judicial reluctance to invalidate collateral state legislation unless Congress manifests a clear purpose to preclude state regulation, is born of the inherent difficulties of speculating about congressional intent on a case by case basis. In this case, the inferences necessary to accept appellants' argument—that Congress intended by implication to preempt state regulation of radar detectors—illustrate the wisdom of this judicial restraint. Appellants suggest that the implication of preemption can be gleaned from the language and purpose of the Act which arguably intend regulation of both transmission and reception of radio waves. The broad statement of federal authority contained in the Act, so the argument proceeds, intends that reception be free from any government interference. Appellants argue that the authorization in the Act for federal prosecution of unauthorized reception specifically occupies the field, including the regulation of radar detectors. In contrast to this apparent exclusivity, appellants point out, the Act provides no role for the states.

state regulation of a particular field or where state regulation is in irreconcilable conflict with the federal regulatory system, the state law may not stand. *Ray v. Atlantic Richfield, supra,* 435 U.S. at 157–58, 98 S.Ct. at 994–95.

Appellants rely on the stated purpose of the Act in support of their view that Congress intended to preempt local regulation of radar detectors. The stated purpose is "to make available . . . to all the people . . . a rapid, efficient . . . radio communication service." 47 U.S.C. § 151 (1976). Radio communication is subsequently defined, in part, as "the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds." *Id.* at § 153(b).

■ Even an expansive reading of the nature of this regulatory purpose does not reach the use of radar detectors. It is manifestly clear that the Act is directed at regulation of the bilateral relationship between transmitters and subscribers in a field which requires such regulation due to the limited number of available frequencies.

*See Red Lion Broadcasting Co., Inc. v. FCC,* 395 U.S. 367, 376, 89 S.Ct. 1794, 1799, 23 L.Ed.2d 371 (1969). A radar detector is indeed a radio receiver, but only in that it is tuned to a single frequency and emits some kind of warning to the driver when it detects a police radar wave. This can hardly be characterized as "communication" to which the Act applies. The purpose of a radar detector is to avoid any communication with the police.

■ The relationship between a police officer using radar and a motorist using a radar detector is of no apparent concern to Congress as long as these activities do not infringe on the rights of other transmitters and receivers. Accordingly, the Federal Communications Commission accommodates the use of police radar by its own regulation, assigning it a separate and protected frequency. *See* 47 C.F.R. § 90.101. *See also People v. Gilbert,* 93 Mich.App. 321, 287 N.W.2d 220 (1980). The Act does not subject receivers, as such, to any regulation [4]

Finally, appellants suggest that "if individual states are allowed to prohibit the manufacture, sale, and ultimately the use of radar detectors, states presumably would be free to prohibit any other radio receiver on any pretext." We are not only unwilling to infer that Congress intended to preempt state regulation of radar detectors, we are unable to do so from these or similar hypotheses. Such a course would amount to second-guessing the federal legislature. Where the Supreme Court has recently inferred preemption from the pervasive nature of the federal scheme, it has done so with only the clearest manifestation of congressional intent. *See, e. g., City of Burbank v. Lockheed Air Terminal,* 411 U.S. 624, 633–39, 93 S.Ct. 1854, 1859–62, 36 L.Ed.2d 547 (1973); *see also Jones v. Rath Packing Co.,* 430 U.S. 519, 537–40, 97 S.Ct. 1305, 1315–17, 51 L.Ed.2d 604 (1977). In support of their conclusion of preemption, appellants can cite only analogous cases involving other regulated fields.

4. In a Bulletin issued by the FCC on July 18, 1980, the agency explained its position on police enforcement of traffic laws by use of radar:

Traffic radars used by police to enforce highway speed limits are transmitters. As such, they are type-accepted and licensed by the FCC under Parts 2 and 90 of its rules, which spell out licensing eligibility, permissible communications, available frequencies, and special operating requirements or limitation. But the FCC does not regulate the

methods of radar enforcement used by the police to identify speeding vehicles.

\* \* \* \* \* \*

Radar "jammers" are devices that emit a radio signal tuned to interfere with, or "jam" a police radar signal. They are clearly unauthorized transmitters and their use would violate FCC rules and the Communications Act. Anyone using a "jammer" risks such penalties as revocation of any FCC licenses, payment of a fine, or even criminal prosecution.

Radar detectors are radio receivers tuned to receive police radar signals and to warn motorists of radar "traps" ahead of them. Generally, the FCC doesn't regulate all transmitters but has limited jurisdiction over receivers. FCC regulation is guided, however, by a policy favoring the authorized use of radio—including police radar—to promote highway safety.

None of the appellants were charged with use of a radar jammer, also expressly forbidden by the police regulation. Consequently, they have no standing to assert the unconstitutionality of that portion of the regulation. *See Broadrick v. Oklahoma,* 413 U.S. 601, 610–611, 93 S.Ct. 2908, 2914–2915, 37 L.Ed.2d 830 (1973); *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960); *Taylor v. Montgomery,* D.C.App., 413 A.2d 923, 925–26 (1980).

since they pose no threat to the free interchange of communication by radio wave.

Other courts have similarly rejected this preemption argument. *See Bryant Radio Supply, Inc. v. Slane*, 507 F.Supp. 1325 (W.D.Va.1981); *State v. Anonymous*, 36 Conn.Supp. 551, 421 A.2d 867 (1980); *People v. Gilbert*, 88 Mich.App. 764, 279 N.W.2d 546 (1979), *aff'd on reh.*, 93 Mich.App. 321, 287 N.W.2d 220 (1980); *Crenshaw v. Commonwealth*, note 4 *supra*.

In *Head v. Board of Examiners*, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963), the Supreme Court held that the authority of the FCC to regulate advertising under the Communications Act did not preempt New Mexico's authority to limit advertising of eyeglass prices by radio. In regard to the case before us, we follow Justice Stewart's observation in *Head* that "In the absence of positive evidence of legislative intent to the contrary, we cannot believe Congress has ousted the States from an area of such fundamentally local concern." *Id.* at 431–32, 83 S.Ct. at 1763–64.

Finally, there is no direct conflict between the police regulation prohibiting the possession of radar detectors in a motor vehicle and the specific provisions of the Communications Act, nor does the police regulation stand as an obstacle to full enforcement of the federal scheme. *See Jones v. Roth Packing Co., supra* note 3, 430 U.S. at 540–41, 97 S.Ct. at 1317–18; *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963). Appellants suggest a conflict results from the FCC enforcement of two provisions of the Act. First, they rely on Title 47 U.S.C. § 605 which prohibits the unauthorized publication or use of communications. They argue that this provision is intended as an exclusive enforcement mechanism whose scope may not be extended by state legislation. We agree with a federal court's reaction to the same argu-

ment. "Clearly § 605 was enacted to protect the rights of privacy of senders and recipients of . . . *communications* . . . and was not meant to regulate the detection of radio transmissions. [C]ompliance with both the state and federal statute is not a physical impossibility." *Bryant Radio Supply, Inc. v. Slane, supra* at 1328. Simply put, the FCC and the D.C. police are regulating two different activities: only the police regulation applies to the operation of a radar detector. Compliance with one regulatory scheme is not incompatible with the other. *See Florida Avocado Growers, supra*, 373 U.S. at 143, 83 S.Ct. at 1217.

Appellants point to a second aspect of the FCC regulatory scheme to support their proposition that the D.C. regulation is in direct conflict. The argument is that the D.C. regulation makes no exception for FCC agents using detection equipment to monitor compliance with the Act. *See* 47 C.F.R. § 0.114(b), (d) (1980). On its face, the police regulation contains no such exemption. However, this speculative assertion can hardly stand for the proposition that the regulation and the federal Act are irreconcilable. *See Exxon, supra* note 3, 437 U.S. at 130, 98 S.Ct. at 2216 (Supreme Court decisions enjoin a court from seeking out hypothetical conflicts between state and federal regulation where none clearly exists). We need not decide the constitutionality of the regulation "in all its conceivable applications." *Kleppe v. New Mexico*, 426 U.S. 529, 546–47, 96 S.Ct. 2285, 2295, 49 L.Ed.2d 34 (1976).

In summary, appellant has failed to identify in the Act a manifestation of congressional intent to preempt local regulation of radar detectors; nor do we find any. In reliance on the apparent harmony between the Communications Act and the police regulation, and mindful of the Supreme Court's view that preemption is rarely to be

---

However, we observe that both the D.C. police regulation and the FCC rules prohibit radar jammers. Rather than creating a conflict, the local regulation of radar jammers actually complements the function of the FCC rules and protects the effectiveness of essential police

radio communications which are accommodated by the Act. *See Crenshaw v. Commonwealth*, 219 Va. 38, 245 S.E.2d 243 (1978); *see also California v. Zook*, 336 U.S. 725, 731–33, 69 S.Ct. 841, 844–45, 93 L.Ed. 1005 (1949).

inferred, we hold that the section of D.C. Pol.Reg.: Art. 25, § 16 prohibiting the possession of a radar detector in a motor vehicle is not preempted by the Communications Act of 1934.

## II

The transportation of motor vehicles across state lines, whether for commercial purposes or for personal convenience and pleasure, is clearly a matter in interstate commerce. *United States v. Hill*, 248 U.S. 420, 423, 39 S.Ct. 143, 144, 63 L.Ed. 337 (1919). However, the commerce clause is no guarantee of the right to bring into a state whatever one may please. *See Robertson v. California*, 328 U.S. 440, 458, 66 S.Ct. 1160, 1169, 90 L.Ed. 1366 (1946). Principles recently enunciated by the Supreme Court in *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981), indicate that the District of Columbia may forbid the possession of a radar detector in a motor vehicle without offending the commerce clause of the United States Constitution.[5] In *Kassel*, the Court overturned Iowa's prohibition on 65-foot, double trailer, "piggy-back" trucks within its borders. In doing so, the Court summarized the principles of the so-called "dormant" commerce clause which imposes a restriction on a state's regulation of commerce, even when Congress has not spoken.[6] *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 350, 97 S.Ct. 2434, 2445, 53 L.Ed.2d 383 (1977). Without our tracing the evolution of the commerce clause, it is now commonly understood that a state may regulate matters of local concern, absent conflicting legislation by Congress, *Kassel, supra*, 101 S.Ct. at 1316, even where such regulation imposes a burden on interstate commerce. The extent of the permissible burden, however, depends on the benefit of the regulation to the state measured against its impact on interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

Equally certain is that the power of the state to regulate matters of interstate commerce is never greater than in the area of highway safety. *Kassel, supra*, 101 S.Ct. at 1316. "[If] safety justifications are not illusory, the court will not second guess legislative judgment about their importance in comparison with related burdens of interstate commerce." *Id., quoting Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 449, 98 S.Ct. 787, 798, 54 L.Ed.2d 664 (1978) (Brennan, J., concurring). The regulation of highway speed is one of the most pressing obligations of a state.

The reasoning of the trial judge on this very issue defies contradiction in our view.

Although no legislative history was recorded concerning the enactment of Article 25, § 16, the legislative goal in the banning of radar detection devices can be inferred readily. [*See United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980) (a legislative body need not articulate its reasons for enacting a statute, particularly where it must engage in the process of line drawing).] The prohibition is intended to promote the public safety by aiding in the enforcement of highway speed limits through preventing drivers from anticipating the presence of police radar. The [Commissioners] must have assumed that drivers

---

**5.** Although not a state, the District of Columbia may not propound legislation that unduly burdens interstate commerce. *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 434–35, 52 S.Ct. 607, 609–10, 76 L.Ed. 1204 (1932); *Stoutenburgh v. Hennick*, 129 U.S. 141, 9 S.Ct. 256, 32 L.Ed. 637 (1889); *Hargrove Displays, Inc. v. Rohe Scientific Corp.*, D.C.App., 316 A.2d 330, 331 (1974).

**6.** The opinion of Justice Powell in *Kassel* garnered only a plurality of the Court. However,

we do not view the critical difference between Justice Powell's views and those of the concurring Justices as particularly relevant to either the principles we rely on from the plurality opinion or the facts of the case before us. The difference of opinion pivots on the basis for judging the reasonableness of the state regulation: by deference to the state legislative purpose or by examination of the factual record made at trial. *See Kassel, supra*, 101 S.Ct. at 1318 (Brennan, J., concurring in the judgment).

who use or possess radar detection devices will be more likely to violate the traffic laws and less likely to be apprehended than those who do not. In banning the possession as well as the use of the devices, the [Commissioners] must also have assumed that those who possess radar detection devices will be likely to use them, in the District of Columbia, in order to avoid speed limits and enforcement efforts.

Furthermore, lesser measures are not available to accomplish the legislative goal of providing safe streets. *See Pike v. Church, supra*, 397 U.S. at 142, 90 S.Ct. at 847 (the extent of the burden tolerated will depend on the nature of the local interest and "on whether it could be promoted as well with a lesser impact on interstate activities"). Once again, the trial judge's reasoning (in a similar legal context) recognized that the regulation is a justified and reasonable exercise of the police power in light of its incidental burden on commerce.

> [T]he regulation may be sustained if it is necessary to accomplish the legislative goal. That goal, as was mentioned earlier, is to prevent drivers from detecting the presence of police radar. This goal may be directly achieved by prohibiting the use of radar detection devices, as Article 25 Section 16 does. The additional prohibition against possession, regardless of the possessor's intent to use the device, does not directly promote this goal.
>
> The prohibition is necessary, however, to adequate enforcement of the proscription against use. The regulation rests on the same basis that underlies the prohibition against drug possession and the possession of weapons. In both of those instances, the legislative goal is to pre-

vent use of the prohibited items. Possession is prohibited as an aid to enforcement of the prohibition against use. It is necessary because use is a surreptitious, covert activity that is nearly impossible to detect or prove. It would not make sense to deprive the legislature of the only reliable means to accomplish its goal. While a blanket prohibition against all possession would reach too far, the prohibition against "possession in a motor vehicle" is sufficiently related to the legislative goal to withstand strict scrutiny.

■ Radar detectors have no utility other than aiding an illicit effort to drive in an irresponsible manner, evading society's punishment for such conduct.[7] Although the D.C. regulation directed at radar detectors is the only law thus far tested in the courts which prohibits mere possession, we nevertheless side with the Court of Appeals of Michigan in *Gilbert, supra* at 771, 279 N.W.2d at 550. "Motorists from adjoining states should simply leave their 'Fuzzbusters' behind."[8] Erecting a barrier at the border of the District of Columbia against such devices is justified by the benefit which the regulation promotes. As the trial judge concluded, the nexus between the prohibition of radar detectors and highway safety is obvious and evidences the rationality of the Commissioner's enactment of the regulation.

■ The District of Columbia also bars unlicensed pistols, D.C. Code 1973, § 22–3204, machine guns, sawed-off shotguns, blackjacks, and switchblades, *id.*, –3214. *See also* D.C. Code 1978, Supp., § 6–1812(d), (e). It is well within the police power of the District of Columbia to declare as contraband such inherently dangerous articles

7. Appellants suggest that "Radar detectors enable motorists to check their speed and to garner evidence for use in any ensuing but unwarranted criminal prosecution for exceeding the speed limit."

8. Appellants suggest that the regulation poses an absolute obstruction on the interstate transport of radar detectors by shippers or in the trunks of private automobiles. Appellants, however, were not convicted for either of these

modes of possession. The radar detectors were all found in the passenger compartments of the automobiles. Therefore, they have no standing to assert the unconstitutionality of the regulation as it might be applied to possession by a shipper or to a private person carrying the device in the trunk of his auto. *See Williams v. Walsh*, 222 U.S. 415, 32 S.Ct. 137, 56 L.Ed. 253 (1912).

without offending the commerce clause. We recently upheld the Firearms Control Regulations Act of 1975, D.C. Code 1978 Supp., § 6–1801 *et seq.*, against the same constitutional attack as appellants make here. The Firearms Act prohibits, among other things, the importation of guns into the District without prompt registration. We held that the requirements of the Act serve a legitimate local concern and are not an unreasonable burden on interstate commerce. *McIntosh v. Washington,* D.C.App., 395 A.2d 744, 756–58 (1978). The same is true in regard to D.C.Pol.Reg.: Art. 25, § 16. Although not inherently dangerous, radar detectors are designed solely to defeat measures aimed at deterring speeding, an inherently dangerous act.

### III

■ Finally, appellants claim that the regulation violates due process because it is unduly vague, arbitrary and overbroad, and creates an irrebuttable presumption. The regulation prohibits the possession or use of "any device designed to detect . . . police radar." The plain meaning of the language used is broad enough to provide fair warning to citizens. *See Colton v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). The regulation forbids the possession of a machine or contrivance, conceived and arranged to identify the presence of police radar.[9] On its face, the regulation is intelligible to the average person as measured by common understanding and practice. *See McIntosh, supra* at 757. There is no first amendment violation involved in the proscriptions of the Act which requires our application of a higher standard of particularity and notice. *See Parker v. Levy,* 417 U.S. 733, 752, 94 S.Ct. 2547, 2559, 41 L.Ed.2d 439 (1974); *District of Columbia v. B.J.R.,* D.C.App., 332 A.2d 58, 61–62 (1975), *cert. denied,* 421 U.S. 1016, 95 S.Ct. 2425, 44 L.Ed.2d 685 (1975).

■ As to the possible overbreadth of the statute, appellants lack standing to

challenge its application to circumstances beyond those for which they were convicted. *See H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981); *Taylor v. Montgomery, supra* note 4 at 925–26. Today, we uphold only the constitutionality of the regulation as it applies to the possession of a radar detector in a motor vehicle, the violation for which appellants were convicted.

Also, the regulation does not violate due process by establishing an irrebuttable presumption. Appellants argue that the regulation permits a presumption from mere possession that the radar detector was actually in use since that finding must necessarily be an element of the offense. Such is not the case. The regulation requires proof only of possession. *Cf. Crenshaw, supra* at 246–47. (The statute prohibits *equipping* a motor vehicle with a radar detector. Presence of the device in the vehicle is prima facie evidence of the offense. However, the statute violates due process by prohibiting the defendant from presenting evidence of inaccessibility and inoperability of the device to rebut the presumption of "equipping" that arises from mere possession.)

■ The mere possession of dangerous or deleterious devices or products may be forbidden by a state under its police powers. *See McIntosh, supra* at 756 and the Supreme Court cases cited there. *See also James v. United States,* D.C.App., 350 A.2d 748, *cert. denied,* 429 U.S. 872, 97 S.Ct. 186, 50 L.Ed.2d 152 (1976) (upholding the constitutionality of D.C. Code 1973, § 22–3601, prohibiting possession of the implements of a crime); *Washington v. United States,* 98 U.S.App.D.C. 100, 232 F.2d 357 (1956) (some articles give rise to an inference of criminal intent). The causal link between prohibiting the use of radar detectors and protecting the public safety, which the Commissioners undoubtedly recognized when enacting the provision, is sufficient to support the reasonableness of the regulation on due process grounds.

*Affirmed.*

---

**9.** Appellants suggest that the statute could be applied to prohibit the possession of "a pair of binoculars, or a CB radio" or "various types of microwave detectors such as traffic engineering surveying equipment or industrial area traffic detectors."