PEOPLE v GILBERT

Docket No. 78-383. Submitted October 10, 1978, at Lansing.—Decided March 6, 1979.

Daniel C. Gilbert equipped his automobile with a radar detector. He was charged with equipping his automobile with a radio receiving set capable of receiving police signals. At a hearing on Gilbert's motion to dismiss, the Troy Municipal Court concluded that radar detectors were in fact radio receiving devices, but dismissed the charge on the basis that the Legislature did not intend the statute under which Gilbert was charged to apply to radar detectors. The prosecutor appealed to Oakland Circuit Court. Robert L. Templin, J., vacated the dismissal and ordered the case remanded to municipal court for trial. Defendant appeals by leave granted, alleging that the phrase "radio receiving set" used in the statute should be interpreted so as to exclude radar detectors, that the statute does not apply to the radio frequency used by police radar, and that the statute is preempted by the provisions of the Federal Communications Act. *Held:*

1. A radar detector is a "radio receiving set" which detects the presence of a certain frequency of radio waves, that used by police radar, and therefore a radar detector falls within the purview of the statute.

2. The fact that the frequencies used by police radar have also been assigned by the Federal Communications Commission for certain uses other than police radar does not affect the applicability of the statute. The statute does not require that the frequencies be assigned exclusively to the police.

3. The statute has not been preempted by Federal law,

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 145, 146.
[2] 73 Am Jur 2d, Statutes § 159.
[3] 73 Am Jur 2d, Statutes §§ 293, 295.
[4] 74 Am Jur 2d, Telecommunications § 147.
[5, 6, 8] 74 Am Jur 2d, Telecommunications § 204.
[7] 16 Am Jur 2d, Constitutional Law § 205.
[8] 74 Am Jur 2d, Telecommunications § 148.

applying either of the two tests to be used in determining whether a state law has been preempted.

Because the defendant was not put on notice that the prohibition of the statute extends to radar detectors, the charges against the defendant are dismissed.

1. STATUTES — CONSTRUCTION — LEGISLATIVE INTENT.

The primary rule of statutory construction is to determine and implement the Legislative intent; in doing so it is not the function of the Court to rule upon the wisdom of a statute.

2. STATUTES — CONSTRUCTION — STATUTORY PURPOSE.

Statutory language should be given a reasonable construction considering the purposes of the statute and the object sought to be accomplished.

3. STATUTES — PENAL STATUTES — CONSTRUCTION.

The language of a penal statute should be construed according to the common and approved usage of the language, although such statutes are to be construed strictly.

4. WORDS AND PHRASES — RADIO — RADAR.

"Radio" is not limited in its meaning to voice communications, and a "radio receiving set" is a device capable of receiving the electric waves involved in a radio transmission.

5. STATUTES — CRIMINAL LAW — RADAR DETECTORS.

A radar detector is a "radio receiving set" which falls within the purview of the statute which prohibits the use in a vehicle of a radio receiving set that will receive signals sent on those frequencies allocated for police purposes (MCL 750.508; MSA 28.776).

6. CRIMINAL LAW — STATUTES — RADIO RECEIVERS — FREQUENCY ALLOCATIONS.

The statute that prohibits use in a vehicle of a radio receiving set that receives signals on a frequency assigned to police does not require that those frequencies be assigned exclusively to the police; therefore, the fact that those frequencies are also allocated for other use does not affect the applicability of the statute (MCL 750.508; MSA 28.776).

7. STATUTES — FEDERAL LAW — STATE LAW — PREEMPTION — TESTS FOR DETERMINATION.

The tests to apply in determining whether state law has been preempted by Federal legislation are: (1) whether the area is one in which the scheme of regulation is so pervasive, the

Federal interest so dominant, or the need for uniformity so great as to exclude state regulation altogether; and (2) if the area does not "inherently" require preemption, whether there can be found such actual conflict between the Federal and state schemes of regulation that both cannot stand, or whether there is evidence of a congressional design to preempt the field.

8. Criminal Law — Statutes — Radio Receivers — Federal Preemption.

The statute prohibiting use in a vehicle of a device to receive signals sent on frequencies assigned to police is not preempted by Federal legislation (MCL 750.508; MSA 28.776.)

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Michael J. Modelski,* Assistant Prosecuting Attorney, for the people.

*Bacalis & Associates, P.C.* (by *Jesse R. Becalis* and *Christopher J. Wiggins),* for defendant on appeal.

Before: Danhof, C.J., and Bashara and Cynar, JJ.

Cynar, J. This case presents a question of first impression in this state. We are called upon to determine whether, under present Michigan law, one can be charged with a misdemeanor for the possession of a radar detector or "Fuzzbuster".

On December 3, 1976, defendant's car was stopped in Troy, Michigan, by a Troy police officer. The officer noticed that defendant's car was equipped with a radar detector. Therefore, he charged defendant with equipping his car with a radio receiving set capable of receiving police signals, a violation of MCL 750.508; MSA 28.776.

On February 28, 1977, a hearing was held in Troy Municipal Court on a motion to dismiss

which had been previously filed by defendant. After the taking of expert testimony concerning the operation of radar detectors, the municipal court judge dismissed the case, stating that the Legislature did not intend the statute to apply to radar detectors. However, he also concluded that radar detectors were in fact radio receiving devices.

The prosecutor subsequently appealed this decision to circuit court. On October 24, 1977, Oakland County Circuit Court Judge Robert L. Templin entered an order vacating the dismissal and remanding the case to municipal court for trial. Defendant now appeals from this order by leave granted April 8, 1978.

The crux of this case involves the scope and applicability of MCL 750.508; MSA 28.776. That statute states:

"Any person who shall equip a vehicle with a radio receiving set that will receive signals sent on frequencies assigned by the federal communications commission of the United States of America for police purposes, or use the same in this state unless such vehicle is used or owned by a peace officer or a bona fide amateur radio operator holding a conditional, general, advanced or extra class amateur license issued by the federal communications commission, without first securing a permit so to do from the commissioner of the Michigan state police upon such application as he may prescribe, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail not more than 1 year or by a fine of not more than $500.00 or by both such fine and imprisonment in the discretion of the court."

Appellant argues that the phrase "radio receiving set" should be interpreted so as to exclude radar detectors, since such devices pick up no voice

communications. Appellee argues that the language of the statute is broad enough to include radar detector devices, which are merely a type of radio receiver.

Neither the statute nor the case law provide any clue as to the meaning of the phrase "radio receiving set". Since the phrase is susceptible to several meanings, its applicability to radar detectors must be determined by reference to the canons of judicial construction. *King v Director of Midland County Dep't of Social Services,* 73 Mich App 253, 258; 251 NW2d 270 (1977). The primary rule of statutory construction is to determine and implement the legislative intent. *Williams v Secretary of State,* 338 Mich 202, 207; 60 NW2d 910 (1953). In doing so, it is not our role to rule upon the wisdom of the statute. *McKibbin v Corp & Securities Comm,* 369 Mich 69, 81; 119 NW2d 557 (1963). The statutory language should be given a reasonable construction considering the purposes of the statute and the object sought to be accomplished. *Shulevitz v Dep't of Treasury,* 78 Mich App 655, 659; 261 NW2d 31 (1977). Although penal statutes are to be strictly construed, *People v Goodchild,* 68 Mich App 226, 232; 242 NW2d 465 (1976), in so doing one should construe the language according to the "common and approved usage of the language". MCL 8.3a; MSA 2.212(1). See also *Baker v General Motors Corp,* 74 Mich App 237, 248; 254 NW2d 45 (1977).

In determining the ordinary and common usage of a term, the Court has often made use of dictionary definitions. See for example *Chrysler Corp v Washington,* 52 Mich App 229, 234; 217 NW2d 66 (1974), and *Baker v General Motors Corp, supra* at 248. Webster's Third New International Dictionary (unabridged, 1966) defines the noun "radio" as:

"the transmission and reception of electric impulses or signals by means of electric waves without a connecting wire."

One of the examples given is "radar". Similarly, the adjective "radio" is defined as:

"of, relating to, employing, or operated by radiant energy esp. of electric waves."

Thus, the primary dictionary definitions of "radio" do not limit its meaning to voice communications. Rather, the focus appears to be upon the "waves" involved in its transmission. A "radio receiving set" would appear to be a device capable of receiving these waves.

Considerable testimony was taken in this case regarding the operation and functioning of a radar detector. Edgar Schlops, the expert witness called by the prosecution, testified that the internal circuitry of a "Fuzzbuster" and a typical radio were very similar. Both have a component for picking up the signal. In a typical radio it is an antenna. In a "Fuzzbuster" it is called a "wave guide". Both have a detector diode which transforms the signal to a different form and transistors which amplify the output. There are two major differences between a typical radio and a radar detector. Unlike a typical radio, a radar detector is fixed to a single frequency, that used for police radar units. Secondly, the output of the detector consists of a light or sonic alarm, as it is not equipped with speakers to reproduce music or voice.

On the basis of the above, we conclude that a radar detector is a radio receiving set for purposes of the statute. A radar detector picks up the same radio waves as does a conventional radio, except at a different frequency. Although the waves are not

transformed to sound in the same manner as a typical radio, this function is not the distinctive, distinguishing feature of all radio receiving sets. We also note that the word "radar" is nothing more than an acronym for "radio detection and ranging". *State v Tomanelli,* 153 Conn 365, 369; 216 A2d 625, 629 (1966), *People v Nasella,* 3 Misc 2d 418, 420; 155 NYS2d 463, 467 (1956). Furthermore, Webster's Third New International Dictionary (unabridged, 1966) defines "radar" as:

"a *radio device* or system for locating an object by means of emitting radio signals * * *." (Emphasis added.)

Thus, the common usage of the terms "radio" and "radar" indicates that radar is simply one type of radio device and that a radar detector is nothing more than a device which picks up the presence of a certain frequency of radio waves. As such, a radar detector is a "radio receiving set" and falls within the purview of the statute.

This conclusion is further buttressed by examining the ostensive purpose of the statute. As noted in *People v Hall,* 391 Mich 175, 189-190; 215 NW2d 166 (1974),

"* * * the fact that [penal] statutes are narrowly construed does not require rejection of that sense of the words which best harmonizes with the overall context of the statutes and the end purpose sought to be achieved by such legislation."

See also *People v Dempster,* 396 Mich 700, 707; 242 NW2d 381 (1976).

The apparent purpose of MCL 750.508; MSA 28.776 is to enhance the efficient and effective execution of police functions. This is done by limit-

ing the confidential use of certain radio frequencies to law enforcement personnel. In this manner, one contemplating a crime will be unaware of the movement of patrol vehicles and the absence or presence of police near the crime scene.

The purpose of the statute is further enhanced by construing it to apply to "Fuzzbusters". The primary purpose of such devices is to detect the presence of police radar. As a general rule those persons using these devices are driving in violation of the speed laws. By using the devices to determine the presence of radar, such persons greatly improve their chances of avoiding apprehension. In passing a statute designed to prevent the monitoring of police movement, we do not believe the Legislature intended any exception for speeding motorists. By prohibiting the use of the "Fuzzbusters" more speed violaters will be apprehended and our streets made more safe.

Defendant next argues that the statute does not apply to the frequency used by police radar, as that frequency is not used exclusively for police purposes. The Federal Communications Commission has assigned the 10,500-10,550 megahertz frequency range for radar use. 47 CFR 2.105-2.106 (1977), 47 CFR 2.1 (1977). The same frequency range has also been assigned to the publice safety radio service, for the discharge of essential nonfederal government functions. See 47 CFR 89.1(b) (1977) and 47 CFR 89.101(h) (1977). Testimony below established that this frequency was also used for some low power burglar alarms. See also 47 CFR 91.601-91.604 (1977). This, however, does not affect the applicability of the statute in this case. MCL 750.508; MSA 28.776 applies to "frequencies assigned by the federal communications commission of the United States of America for

police purposes * * *". It does not require that such frequencies be assigned exclusively to the police. We believe the FCC regulations noted above establish that the frequency utilized by police radar has been assigned by the FCC "for police purposes". Therefore, defendant's argument in this regard is without merit.

Defendant finally contends that the Michigan statute is preempted by the provisions of the Federal Communications Act of 1934.[1] There are two tests to apply in determining if state law has been preempted by Federal legislation. There are some areas where the scheme of regulation may be so pervasive, the Federal interest so dominant, or the need for uniformity so great as to exclude state regulation altogether. See *Rice v Santa Fe Elevator Corp,* 331 US 218, 230; 67 S Ct 1146; 91 L Ed 1447 (1947), and *Florida Lime & Avocado Growers Inc v Paul,* 373 US 132, 143-144; 83 S Ct 1210; 10 L Ed 2d 248 (1963).

However, in *Head v New Mexico Board of Examiners in Optometry,* 374 US 424, 431; 83 S Ct 1759; 10 L Ed 2d 983 (1963), the Court held that the Federal regulatory scheme was not so pervasive, the need for uniformity so strong or Federal interest so dominant as to prohibit the states from regulating the content of advertising broadcast over the airwaves. We believe a similar result is warranted here. Although the Federal scheme allocating frequencies to persons for transmission uses may be so pervasive as to occupy the field, *Head, supra* at 430, n. 6, the question of who may receive these frequencies has not been so addressed in the Federal scheme. Nor is the Federal interest in this subject so dominant or the need for uniformity so strong as to prohibit state regula-

---

[1] 47 USC 151 *et seq.*

tions. On the contrary, the state interest in assuring that the police will be effective in maintaining the safety of the highways is consistent with and complementary to the Federal interest of lowering traffic speed to conserve energy. Although other states may not ban the possession of "Fuzzbusters", this does not create any potential conflict requiring uniformity. Motorists from adjoining states should simply leave their "Fuzzbusters" behind.

Since this situation does not "inherently" require preemption, the Michigan statute must be upheld unless there is found

"such actual conflict between the two schemes of regulation that both cannot stand in the same area, [or] evidence of a congressional design to preempt the field." *Head, supra,* at 430.

Defendant is unable to point out any actual conflict between the Federal and state scheme or of a congressional design to preempt the field. Those Federal provisions which authorize the FCC to issue licenses to operate a radio *transmitter* in no way conflict with the state prohibition upon the use of a species of radio *receiver.* Similarly, those portions of the Federal scheme providing for sanctions against licensed operators do not conflict with the state statute's criminal penalty for performing a completely distinct act. Therefore, we hold that MCL 750.508; MSA 28.776 is not preempted by Federal legislation. In accord, *Crenshaw v Commonwealth,* — Va —; 245 SE2d 243, 245-246 (1978).

In conclusion, we construe the prohibition of MCL 750.508; MSA 28.776 to extend to radar detectors. We further hold that the subject matter of the statute has not been preempted by Federal

legislation. However, we note that, up until today, a person of ordinary intelligence has not been put on notice that the use of such devices is forbidden. Defendant's conduct was not *malum in se;* nor is this Court's interpretation of the statute so obvious that it should have been forseen by defendant. As noted in *People v Dempster,* 396 Mich 700, 715-716; 242 NW2d 381 (1976):

"It is true that interpretations of statutory provisions by a court may add a clarifying gloss to otherwise unclear words, and thereby provide constructive notice to *future* defendants, but 'an unforseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law * * *' and '* * * the effect is to deprive [the defendant] of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime.' "

Therefore we conclude that the charges against defendant should be dismissed.[2]

This opinion serves to put all persons on notice that equipping one's vehicle with a radar detector is prohibited under Michigan law. As of the date of release of this opinion those persons equipping their vehicle with a radar detector may be prosecuted under MCL 750.508; MSA 28.776.

For the reason stated in this opinion, the charges against defendant are dismissed.

---

[2] We realize that defendant has not raised the due process argument in his brief or at oral argument. We grant defendant this relief pursuant to GCR 1963, 820.1(7) which permits this Court to "grant such relief, as the case may require * * *."