Lawrence W. **WALLMAN**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 1–1080A289.

Court of Appeals of Indiana, First District.

May 12, 1981.

Rehearing Denied June 18, 1981.

Richard L. Tandy, George E. Purdy, Van Valer, Wicker & Tandy, Greenwood, for appellant.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Lawrence W. Wallman appeals his conviction by the Sullivan County Court of possession of a portable police radio.

We reverse.

## STATEMENT OF THE FACTS

On December 5, 1979, Indiana State Police Trooper Jerry W. Cliver was patrolling southbound U. S. Highway 41 one-tenth mile west of Sullivan, Indiana. Using his K55 radar unit, he clocked a truck travelling north at seventy-seven miles per hour. After turning his vehicle around, Trooper Cliver pursued the north-bound truck. As he approached the truck he came upon an automobile driven by Lawrence W. Wallman of Indianapolis. Trooper Cliver observed a light on a box on the dashboard of Wallman's automobile, directly below the rearview mirror. He motioned Wallman and the truck driver to the side of the road. Trooper Cliver arrested Wallman and confiscated a radar detection device from Wallman's automobile.

Wallman was charged with possession of a portable police radio, a Class B misdemeanor, and was released on bond. He was convicted in a trial before the Sullivan County Court and was fined $10.00 plus court costs.

## STATEMENT OF THE ISSUE

Wallman has raised a number of issues on appeal, but we need consider only one issue inasmuch as it is dispositive of this case: Whether the trial court erred in overruling Wallman's motion to dismiss the information, because the statute under which he was charged, Ind.Code 35–44–3–12, is unconstitutionally vague.

## DISCUSSION AND DECISION

Indiana Code 35–44–3–12 provides as follows:

"35–44–3–12 Unlawful use of a police radio; exemptions; 'portable police radio' defined

"Sec. 12. (a) A person who knowingly or intentionally possesses a portable police radio commits unlawful use of a police radio, a Class B misdemeanor.

"(b) This section does not apply to:
(1) a governmental entity;
(2) a regularly employed law enforcement officer;
(3) a common carrier of persons for hire whose vehicles are used in emergency service;
(4) a public service or utility company whose vehicles are used in emergency service;
(5) a person who has written permission from the chief executive officer of a law enforcement agency to possess a portable police radio;
(6) a person who holds an amateur radio license issued by the Federal Communications Commission;
(7) a person who uses a portable police radio only in his dwelling or place of business;
(8) a person:
(A) who is regularly engaged in news-gathering activities;
(B) who is employed by a newspaper qualified to receive legal advertisements under IC 5–3–1, a wire service, or a licensed commercial or public radio or television station; and
(C) whose name is furnished by his employer to the chief executive officer of a law enforcement agency in the county in which the employer's principal office is located; or
(9) a person engaged in the business of manufacturing or selling portable police radios.

"(c) 'Portable police radio' means a radio receiving set that is capable of receiving signals transmitted on frequencies assigned by the Federal Communications Commission for police emergency purposes and that:

(1) can be installed, maintained, or operated in a vehicle; or
(2) can be operated while it is being carried by an individual.

The term does not include a radio designed for use only in a dwelling."

Prior to trial, Wallman moved to dismiss the information on the grounds, among others, that IC 35–44–3–12 is unconstitutionally vague or, alternatively, that the facts stated in the information did not charge a crime, because a radar detection device does not fall within the purview of the statute. Wallman introduced evidence at the hearing on the motion to dismiss which showed that his radar detection device was designed to respond to transmissions at 10.50 to 10.525 GHz (gigahertz) and at 24.15 GHz. He argued that Federal Communications Commission regulations, as found in the Code of Federal Regulations, are difficult for persons of average intelligence to interpret, do not refer to the term "police emergency purposes" which is used in IC 35–44–3–12(c), and allocate the frequencies to which Wallman's radar detection device is designed to respond to both governmental and non-governmental uses. The state introduced evidence showing that the F.C.C. had authorized the Indiana State Police to use the frequency 10.525 MHz (megahertz) (10.525 GHz) in its mobile radiolocation transmitters. The trial court overruled Wallman's motion to dismiss.

■■■ A penal statute such as IC 35–44–3–12 must be strictly construed against the state, but the statute must not be construed so narrowly as to exclude cases fairly covered by it. *Cape v. State*, (1980) Ind., 400 N.E.2d 161; *State v. Bigbee*, (1973) 260 Ind. 90, 292 N.E.2d 609. A statute is presumed to be constitutional, and that presumption continues until it is clearly overcome by a showing that it is unconstitutional. *Hall v. State*, (1980) Ind., 403 N.E.2d 1382. The requirement that a penal statute be narrowly construed must be balanced against the presumption in favor of the statute's constitutionality. *State v. Bigbee, supra.* If the language of a statute supports a construction which is constitutional, then

that construction must be adopted. *Progressive Improvement Association v. Catch All Corp.*, (1970) 254 Ind. 121, 258 N.E.2d 403; *State v. Clements*, (1939) 215 Ind. 666, 22 N.E.2d 819.

The Due Process Clause of the Fourteenth Amendment to the Constitution of the United States has been held to prohibit vagueness in penal statutes.[1] In *Sumpter v. State*, (1974) 261 Ind. 471, 476, 306 N.E.2d 95, *appeal dismissed* 419 U.S. 811, 95 S.Ct. 25, 42 L.Ed.2d 38, our Supreme Court said: "Penal statutes, in order to satisfy due process requirements, must be sufficiently explicit so as to adequately inform individuals of ordinary intelligence of the consequences of their contemplated conduct." Stated another way, "a law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." *Baggett v. Bullitt*, (1964) 377 U.S. 360, 367, 84 S.Ct. 1316, 1320, 12 L.Ed.2d 377; *Grody v. State*, (1972) 257 Ind. 651, 278 N.E.2d 280; *Griffin v. State*, (1976) 171 Ind.App. 543, 357 N.E.2d 917, *trans. denied* (1977). The Supreme Court of the United States explained the policy behind the proscription of vague laws as follows:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" ' . . . than if the boundaries of the forbidden areas were clearly marked." (Footnotes omitted.)

*Grayned v. City of Rockford*, (1972) 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222.

Wallman contends on appeal that IC 35–44–3–12 is void for vagueness in that it relies upon federal regulations for the definition of the criminal activity the Indiana statute prohibits and the F.C.C. regulations do not use the term "police emergency purposes," which is used in IC 35–44–3–12(c) in the definition of "portable police radio." Alternatively, Wallman asserts that, assuming IC 35–44–3–12 is not void for vagueness, the statute does not apply to his case, because the frequencies on which his radar detection device operates have been assigned for both governmental and non-governmental use [2] and have not been assigned for "police emergency purposes."

The state has thoughtfully examined dictionary definitions [3] of terms such as "radio," "radar," "signal," and "emergency," and the F.C.C. definitions [4] of "radio," "radar," and "radiodetermination." According to the state, a signal is the "sound, image, or message transmitted or received in telegraphy, telephony, radio, television, or radar." [5] When synthesized, these various definitions indicate that radar is a radiode-

---

1. In Indiana, all crimes are statutory, *State v. Lopez*, (1973) 156 Ind.App. 379, 296 N.E.2d 918, *trans. denied*, and Article 4, § 20, of the Constitution of Indiana provides that "[e]very act and joint resolution shall be plainly worded, avoiding, as far as practicable, the use of technical terms." However, neither of the parties has cited this provision on appeal, so we will not rely upon it in deciding this issue.

2. 47 C.F.R. § 2.106 (1979).

3. *American Heritage Dictionary* (1975).

4. 47 C.F.R. §§ 2.1 and 90.7 (1979).

5. As quoted by the state from the *American Heritage Dictionary, supra*, at 1204.

termination system, *i. e.*, a means of using radio waves to determine the position or velocity of an ·object. The state agrees with the trial court's finding that the key to the determination of this issue is the use of the term "signals" in IC 35–44–3–12(c) and that the alleged vagaries in the statute are merely semantic disputes. The state maintains that IC 35–44–3–12 is sufficiently clear to make an ordinary person interested in buying a radar detection device aware of potential violations and to enable him to ask informed questions of the manufacturer, the dealer, or the F.C.C.

We are aware of only three other reported cases which have involved similar challenges to similar statutes. In *People v. Faude,* (1976) 88 Misc.2d 434, 388 N.Y.S.2d 562, a justice's court dismissed the charge on the grounds that the statute was enacted in 1933, whereas radar did not appear until 1940, and that the legislative history of an amendment to the statute in question as well as the express language of another, related statute indicated that the term "signals" was intended to mean "vocal transmissions." In *People v. Moore,* (1978) 92 Misc.2d 807, 401 N.Y.S.2d 440, a county court affirmed the trial court's dismissal of charges on the ground that the device in issue only detected the presence of a radio signal and could not receive a signal in the sense of *translating a signal into any comprehensible form.* Both of these New York courts concluded that the statute was inapplicable to radar detection devices.

On the other hand, the Court of Appeals of Michigan held that its statute does prohibit the use of radar detection devices. *People v. Gilbert,* (1979) 88 Mich.App. 764, 279 N.W.2d 546, *aff'd on rehearing* 93 Mich. App. 321, 287 N.W.2d 220. After examining dictionary definitions of "radio" and "radar" and expert testimony concerning the similarities and differences between a typical radio and a radar detection device, the court concluded that a radar detection device is a "radio receiving set" within the meaning of the statute. The court also observed that construing the statute to cover radar detection devices furthers the purpose of the statute, which is "to enhance the efficient and effective execution of po-

lice functions. . . . by limiting the confidential use of certain radio frequencies to law enforcement personnel." *Id.* at 770–71, 279 N.W.2d 546. The court stated it did not believe the legislature intended to grant an exception from the statute for speeding motorists. That the frequency involved is not used exclusively for police purposes was held not to affect the statute's applicability to radar detection devices *inasmuch as the* court found that the F.C.C. regulations do assign the frequency for police purposes. Although the court construed the statute to apply to radar detection devices, it dismissed the charges against the defendant, because up to that time, "a person of ordinary intelligence has not been put on notice that the use of such devices is forbidden. Defendant's conduct was not *malum in se;* nor is this Court's interpretation of the statute so obvious that it should have been foreseen by defendant." *Id.* at 774, 279 N.W.2d 546. On rehearing, the court affirmed its earlier decision after determining that although the amended F.C.C. regulations did not assign the frequency in question to the Police Radio Service, testimony given at trial by a radar technician showed that under the F.C.C. licensing scheme, that frequency is reserved for police purposes.

We do not believe that the scope of IC 35–44–3–12 is so clearly limited to devices capable of receiving vocal transmissions or other comprehensible messages as the New York courts determined their statute to be in *Faude, supra,* and *Moore, supra.* At the same time, we decline to follow the approach used by the Court of Appeals of Michigan of first admitting that the court's construction of the statute to include radar detection devices was not foreseeable but then assuming that future defendants would have constructive notice of the statute's meaning.

■ We find IC 35–44–3–12 to be sufficiently clear and definite to prohibit, at the very least, possession of portable radios capable of receiving vocal police radio communications. We need not and do not attempt in this opinion to lay out all of the limits of IC 35–44–3–12(c).

However, despite the state's vigorous efforts to show that a radar detection device is, scientifically speaking, "a radio receiving set that is capable of receiving signals transmitted on frequencies assigned by the Federal Communications Commission for police emergency purposes," IC 35–44–3–12(c), our statute does not afford adequate notice to a person of ordinary intelligence that possession of a portable radar detection device violates the law. We believe that to most people the term "radio receiving set" brings to mind a fairly typical radio which receives vocal or code messages. Parts (3) through (8) of subsection (b) of IC 35–44–3–12 reinforce this connotation. Those parts grant exclusions from the statutory prohibition for, among others, ham radio operators, news reporters, and public utility companies operating emergency service vehicles. It is hard to imagine why such persons would be permitted to possess portable radar detection devices while the average motorist is not. Accordingly, a person of ordinary intelligence reading this statute would be encouraged to believe that it is inapplicable to radar detection devices.

A statute which on its face is plain and unambiguous may violate due process when it is applied to a specific situation. *United States v. Spector,* (1952) 343 U.S. 169, 72 S.Ct. 591, 96 L.Ed. 863; *State ex rel. Davenport v. International Harvester Co.,* (1940) 216 Ind. 463, 25 N.E.2d 242. Indiana Code 35–44–3–12 is plain and unambiguous on its face. However, if we were to construe this statute to apply to Wallman's radar detection device, it would be unconstitutionally vague, because its terminology is too general to put a person of ordinary intelligence on notice that possession of a portable radar detection device is prohibited. Although we must strictly construe IC 35–44–3–12 against the state, *Cape v. State, supra; State v. Bigbee, supra,* we are also obligated to adopt, if possible, a construction of the statute which is constitutional, *Progressive Improvement Association v. Catch All Corp., supra; State v. Clements, supra.* Consequently, in order to avoid giving IC 35–44–3–12 an unconstitutionally vague construction, we hold that this statute does not prohibit the possession of a portable radar detection device.

The portable police radio which Wallman was alleged in the information to have knowingly and intentionally possessed was described as "a radio device capable of receiving an assigned police frequency and commonly referred to as a radar detection device." Because IC 35–44–3–12 does not prohibit possession of such a device, Wallman's motion to dismiss the information was erroneously overruled.

We, therefore, reverse the conviction of Lawrence W. Wallman.

NEAL, P. J., and ROBERTSON, J., concur.