**In the Matter of Christine LOZIER, A Child Alleged to Be In Need of Services.**

No. 4-982A277.

Court of Appeals of Indiana, Fourth District.

Sept. 8, 1983.

Rehearing Denied Oct. 26, 1983.

---

Kelly Leeman & Associates, Logansport, for appellant.

Michael A. Shurn, Winamac, for appellee.

John Kocher, Winamac, guardian ad litem for Christine Lozier.

YOUNG, Judge.

On June 16, 1982, the Pulaski Circuit Court issued a dispositional decree terminating the parental rights of Shari Lozier (hereinafter the mother) in her daughter Christine (hereinafter the child). In appealing the involuntary termination of the parent-child relationship, the mother argues the trial court's decree was not supported by sufficient evidence. We reverse.

Two months after the nineteen-year-old mother gave birth, the child was adjudicated to be a child in need of services. At that time, the child was experiencing respiratory problems and severe diaper rash. She had been residing with the mother in an unsanitary home and her personal hygiene was in great need of attention. During the months following the child's removal, the mother participated in various rehabilitation programs, but she moved to Richmond, Indiana in August before completing any of the programs. Before moving the mother informed two of the persons who had been working with her of her need to leave town to get her "life together." Upon her return to Winamac in April of 1982, the mother filed a petition to reinstitute counseling and visitation, and the Welfare Department filed a petition for termination of parental rights. After a hearing, the trial court found the Department proved each of the statutory requirements necessary for involuntary termination of parental rights.[1]

In determining whether the evidence is sufficient to support the trial court's judgment, we may not reweigh the evidence nor judge the credibility of the witnesses, but we may consider only the evidence most favorable to the judgment. *Matter of Myers,* (1981) Ind.App., 417 N.E.2d 926; *Matter of Fries,* (1981) Ind. App., 416 N.E.2d 908. In the present case, the evidence did not meet the stature of the clear and convincing evidence standard as enunciated by the Supreme Court in *Santosky v. Kramer,* (1982) 455 U.S. 745, 102

---

1. In accordance with the statute in effect at the time of the hearing, the Department was required to prove the following:

   (1) the child has been removed from his parent for at least six (6) months under a dispositional decree;

   (2) there is a reasonable probability that the conditions that resulted in his removal will not be remedied;

   (3) reasonable services have been offered or provided to the parent to assist him in fulfilling his parental obligations, and either he has failed to accept them or they have been ineffective;

   (4) termination is in the best interests of the child; and

   (5) the county department has a satisfactory plan for the care and treatment of the child.

   Ind.Code 31-6-5-4 has since been amended by Acts 1982, P.L. 183, § 4.

S.Ct. 1388, 71 L.Ed.2d 599; *see also Ellis v. Knox County Department of Public Welfare,* (1982) Ind.App., 433 N.E.2d 847. In so holding, we are not condoning ignorance nor excusing the mother's neglectful attitude toward the child after her birth. Rather, we reverse the trial court's judgment because the Department failed to establish that there was a reasonable probability the conditions which resulted in the child's removal would not be remedied. *See* Ind.Code 31–6–5–4(2) (West 1979).

■ Specifically, the Department's evidence in that regard focused on conditions and events during the two month period the mother and child were together. That evidence alone would obviously be insufficient, as it would only establish reasons for the child's initial removal and it would not necessarily reflect probabilities for the future.

The evidence was buttressed to an extent by events occurring subsequent to the child's removal. In arguing the child is not a priority in the mother's life, the Department cited the fact the mother left Winamac to get her "life together" and the fact she had minimal contact with the Department during her eight month absence. In further support of its contention, the Department cites the fact that, due to transportation problems, the mother missed an appointment to visit the child two months after her departure from Winamac. The mother requested visitation again in December and the Department refused. The only evidence current at the time of the termination hearing showed that the mother had moved into her mother's home, and that she was receiving minimal income from part-time babysitting.

While we cannot state the mother's home at the time of the hearing was optimal for child rearing, neither can we state it was wholly inadequate. *See Santosky v. Kramer, supra* and *Matter of Miedl,* (1981) Ind., 425 N.E.2d 137. In addition, the quantum of evidence establishing the mother's past inattentiveness did not clearly and convincingly establish a reasonable probability that the conditions which resulted in the child's removal would not be remedied. Holding otherwise is tantamount to ignoring the mother's due process rights by eviscerating the effect of *Santosky.*

In that case, Justice Blackmun discussed factors which create significant prospects of erroneous termination, such as the State's ability to assemble its case and the fact that many parents subject to rights termination are often poor, uneducated, or members of minority groups and hence vulnerable to bias. The majority stated that raising the burden of proof was one way to impress the fact finder with the importance of the decision, hopefully reducing the possibilities of erroneous termination and thereby protecting the best interests of the parent and the child. The majority justified shifting the risk of error by stating:

> For the child, the likely consequence of an erroneous failure to terminate is preservation of an uneasy status quo. For the natural parents, however, the consequence of an erroneous termination is the unnecessary destruction of their natural family. A standard that allocates the risk of error nearly equally between those two outcomes does not reflect properly their relative severity.

*Id.* 102 S.Ct. at 1400–1401. (Footnote omitted.)[2]

In light of *Santosky,* we cannot state the Department established adequate grounds for the termination of the mother's parental rights. As the effect of our decision is to return the mother and child's relationship to the status quo, the cause is remanded for a determination of whether the mother should have custody or, in the alternative, have visitation and counseling reinstituted to further develop and test her parenting skills.

Reversed and remanded.

CONOVER, P.J., and MILLER, J., concur.

2. The court's reference to "an uneasy status quo" reflects a requirement of the New York statute similar to Ind.Code 31–6–5–4(1). At the time of the hearing, the child is not in the parent's custody.