**In the Matter of J.H., a Child Alleged to be in Need of Services.**

**D.H., Natural Mother, Respondent-Appellant,**

v.

**BARTHOLOMEW COUNTY DEPARTMENT OF PUBLIC WELFARE, Petitioner-Appellee.**

**No. 1–184A21.**

Court of Appeals of Indiana, First District.

Sept. 17, 1984.

Rehearing Denied Oct. 24, 1984.

---

Chris D. Monroe, Jurgemeyer, Voelz & Monroe, Columbus, for respondent-appellant.

Donald J. Dickherber, Lawson, Pushor, Mote & Coriden, Columbus, for petitioner-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Respondent-appellant, D.H., the mother of J.H., appeals the decision of the Bartholomew Circuit Court terminating the child/parent relationship existing between the parents D.H. and M.H. and their child, J.H.

We affirm.

## STATEMENT OF THE FACTS

The trial court made the following findings of fact, which are supported by the evidence and not challenged:

"The Court, after hearing evidence herein and taking the matter under advisement, now finds as follows:

1. That the natural mother of J.H. is D.H. and the natural father is M.H. That the child, J.H., was born November 14, 1972.

2. That the initial contact concerning this child was on an allegation of physical abuse of the child. Subsequently, the mother admitted punching the child in the stomach and head and whipping the child with a belt, which whippings the child indicated were in the genital area.

3. The child had earlier been placed in wardship in the State of Mississippi.

4. This child was placed in the care of the Bartholomew County Department of Public Welfare in May of 1981 and he continued under their care until the summer of 1982, at which time the child was placed in the home of the mother. While in the mother's home, the child regressed into previously practiced unacceptabel [sic] behavior and was removed from the mother's home in August of 1982 and placed in the Delta Treatment Center in Bloomington, Indiana where the child presently resides.

5. At the early stages of involvement of the Welfare Department, it was determined that the mother was very dependent and incapable of being a parent to the child. That the mother was incapable of maintaining a suitable home for

the child, and was incapable of dealing with the simplest of financial matters. At the time of this hearing, the mother was living at 713½ Reed Street, Columbus, Indiana, her rent being paid by the Columbus Housing Authority and she was not employed.

6. The Bartholomew County Department of Public Welfare from July of 1981 to the date of this hearing provided numerous services to the mother which included 19 visits with a counselor at Family Services and a similar number of visits with and without the child to a counselor at Quinco Consulting Center.

7. The Counselor at Family Services does not recommend the return of the child to the mother and the counselor is not encouraged by the progress made by the mother since engaging in the counseling in September of 1982.

8. The counselor at Quinco Consulting Center, upon the starting of the counseling sessions in July of 1981, saw the child as needing a stable home situation and the child was demonstrating his insecurity and lack of a proper home environment by engaging in eccopresis [sic] and enuresis. The two problems were resolved when the child was placed in foster care but the problems returned when the child was placed with his mother in the summer of 1982. This activity was a way the child controlled his mother. The interaction of the mother with the child was inappropriate and the mother did not interact with the child like that of a normal mother. While in the home of the mother during the summer of 1982, the child's condition deteriorated and he became agressive [sic] again to adults and to other children which was inappropriate behavior. The Quinco counselor felt that as of August, 1982, and after 13 months of work with the child and his mother, that little or no progress had been made and that the child should be placed for adoption.

9. Upon entering the Delta Treatment Center, the child displayed characteristics of a physically abused child and he was diagnosed as being a bright child

with emotional and behavioral problems. The child manipulated other people by encopresis and enuresis, but these problems were solved within the first several months at Delta Treatment Center.

10. Delta Treatment Center emphasizes maintaining contact between the parents and child, but because of inappropriate behavior on the part of the mother, the phone contact and visits were terminated and the mother was asked to engage in individual and group psychotherapy, before future visits would commence, to which the mother agreed, but has not pursued. The child has been out of the mother's home since August of 1982, and the father has not had any substantial contact with the child for several years.

11. The child has progressed well in the Delta Treatment Center, but now needs to be placed for adoption so he can be in a stable home environment.

12. A representative of Delta Treatment Center related the child desired the termination of his mother's parental rights. Other than a phone conversation with the child, the child has corresponded with his mother only four times within the past year.

13. The mother is unable to relate to her child as an adult and when observed with the child, the child assumes the role of the adult. At these times, the child becomes physically abusive to his mother.

14. Within the last year, the mother has displayed inappropriate behavior by contacting a welfare worker and indicating she would kill herself and it would be that welfare worker's fault.

15. The mother genuinely loves the child and desires to have the child in her home, but admits she cannot financially care for the child, but will care for him in other ways.

16. The mother indicates she does not need any further therapy in spite of the fact that she has not made progress in the counseling extended to her up to the time of this hearing.

17. The mother admitted that she has had 12 to 15 jobs over the past two years, with the longest terms of employment being two (2) to three (3) months.

18. The Petitioner has developed a satisfactory plan of care and treatment for the child, being placement for adoption.

19. It is in the best interest of the child that the parental rights of D.H., the natural mother, and M.H., the natural father, be terminated as to J.H."

Based upon the above findings, the court terminated the parent/child relationship existing between D.H., M.H. and their child, J.H., and ordered him placed for adoption. The father did not appear and is not a party to the appeal.

### ISSUES

D.H. presents to the court for review the question of sufficiency of the evidence to establish:

I. Reasonable probability that the conditions which resulted in the child's removal from the home would not be remedied.

II. That termination was in the best interest of the child.

III. That the Welfare Department had a satisfactory plan for the care and treatment of the child.

IV. In this issue, D.H. challenges the constitutionality of IND.CODE 31-6-5-4 as unconstitutionally vague.

### DISCUSSION AND DECISION

*Issue I: Unremedied Conditions.*

█ D.H. argues that under IND.CODE 31-6-5-4, the Department of Welfare must prove by clear and convincing evidence that "(2) there is a reasonable probability that the condition that resulted in the child's removal will not be remedied". D.H. contends that J.H. was taken from her home because of abuse. When the child was returned to her for two months in 1982, no further abuse occurred, and she complied with all the requests and conditions of the Welfare Department. The child was taken

from her the second time only because she was not able to properly parent the child; thus, the focus in the care, primarily based upon the two month period, shifts from abuse to D.H.'s inability to appropriately parent the child. That short amount of time, she concludes, was insufficient to evaluate the future probabilities to justify terminating parental rights.

The evidence showed, and the court so found, that while the initial complaint received by the department was abuse, which was later confirmed, it was immediately discovered that the abuse was only symptomatic of a long-standing myriad of odd behavior characteristics which rendered D.H. unfit to parent the child. The behavior consisted of constantly quoting Bible verses, decorating J.H.'s lunch box with Bible verses, standing in front of a closet buttoning and unbuttoning clothing, dragging J.H. out of bed in the middle of the night and making him brush his teeth and stay in the bathroom for a long period of time, and walking around in front of him completely nude. She was unable to keep a job or maintain a house and cook. The 10 year old child, J.H., was being ruined and stood no chance of rehabilitation so long as he remained in D.H.'s care. The two month period was merely the conclusive test.

As stated in *Matter of Miedl*, (1981) Ind., 425 N.E.2d 137:

> *"Perkins v. Allen County Dept. of Public Welfare*, (1976) 170 Ind.App. 171, 352 N.E.2d 502 provided that the trial court must find delinquency or neglect to have been habitual or long standing, that there was substantial probability of future deprivation of the children because of the habitual patterns of the parent, and that it was not foreseeable that the children's welfare would be served by continuing the parent-child relationship. *Id.* at 182, 352 N.E.2d 502.
>
>     *     *     *     *     *     *
>
> There also was substantial evidence that termination of Glenda's parental rights was in the children's best interest under

Sec. 31–6–5–4. To say that this evidence was insufficient would be to substitute our judgment for that of the trial judge. Furthermore, we cannot accept the strained interpretation the Court of Appeals put on Sec. 31–6–5–4(4) and (5). It was certainly not the intention of the Legislature that the future plans for the children would be detailed in the evidence so that the Court could choose the 'best' alternative for the children involved. Children are not taken from the custody of their parents because there is a better or the 'best' place for them. They are taken because the present place in the custody of their parents is wholly inadequate for their very survival. Before a court can do anything with regard to the future of the children, it must first be found that the circumstances are such that the parental tie must be severed and a different direction found that gives some chance to the child or children. It is obvious the Legislature intended that the Welfare Department would point out in a general sense to the trial court the direction in which its plans were going. It could be that the case would involve a child that needed a great deal of medical or psychiatric care, one that was severely handicapped and needed special care along these lines, or one that needed a stable home in which to grow and mature as in this case."

*Matter of Miedl, supra,* at 140, 141.

This case is totally dissimilar to a case cited by D.H., *Matter of Lozier,* (1983) Ind.App., 453 N.E.2d 345, in which a two-month old baby was taken from a 19 year old girl with problems. Here, D.H. had the child nine years.

After detention of the child, a host of social agencies applied their expertise without success to upgrade D.H.'s parenting skills to an accepted level. One and all recommended termination of parental rights as the only way to salvage J.H. We find the evidence sufficient.

*Issue II: Best Interests of Child.*

■ D.H. argues in this issue that there is insufficient evidence to support the court's conclusion that termination of the parent/child relationship was in the best interests of the child. She argues that the child was 10, knows his mother, and may be difficult to place for adoption. Though she concedes that J.H. made significant progress while at the Delta Treatment Center, and that J.H. needs a home to continue his development, she argues that there is insufficient evidence to show that she could not maintain the progress if he were returned to her. She also returns to the argument raised in Issue I that the two month trial period is inadequate. She correctly argues that the purpose of the Code, as stated in IND.CODE 31–6–1–1(5), is to strengthen family life by assisting parents to fulfill their parental obligations. To defeat this purpose, she rightly concludes the Welfare Department must show by clear and convincing evidence that the best interests of the child are served by termination.

After the 10 year old J.H. was removed from the home, he did a "magnificent" job at Delta. He was described as gifted, totally in self control, and a skilled athlete. He had stopped his habits of "encopresis" and "enuresis". When he was returned to D.H., against advice of professionals, he regressed to his former state. D.H. lost control of her life and made no progress in parenting skills. The conclusion reached by the trial court was inescapable; continued placement with D.H. would irrevocably ruin any chance whatsoever J.H. might have for a normal life. We find no error.

*Issue III: Satisfactory Plan.*

D.H. argues that adoption is not a satisfactory plan. Adoption can be a satisfactory plan. *Matter of Miedl, supra.* It appears to us that only three alternatives existed: (1) institutionalization, (2) foster care, and (3) adoption. We are unconvinced that the court erred.

*Issue IV: Constitutionality.*

■ D.H. argues that IND.CODE 31–6–5–4 is unconstitutional on its face and as applied to this case, because it violates the Fourteenth Amendment for failure to specify substantial grounds for determining

when permanent termination of parental rights is appropriate and is so vague and ambiguous that it does not satisfy due process.

IND.CODE 31-6-5-4, as relevant here states:

"A petition to terminate the parent/child relationship involving a ... child in need of services may be ... filed with the juvenile court ... and the petitioner must allege:

(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(2) there is a reasonable probability that the conditions that resulted in his removal will not be remedied."

The above statute refers to a child in need of services statute. IND.CODE 31-6-4-3 states:

"(a) A child is in need of services if before his 18th birthday:

1. His physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of his parent ... to supply the child with necessary food, clothing, shelter, medical care, education, or supervision.

2. His physical or mental health is seriously endangered due to injury by the act or omission of his parent ...."

D.H. cites only *Wallman v. State*, (1981) Ind.App., 419 N.E.2d 1346, a criminal case, for the proposition:

"A law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differs as to the application violates due process."

*Wallman, supra,* at 1349 (citations omitted).

In *Matter of V.M.S.*, (1983) Ind.App., 446 N.E.2d 632, this court, in affirming the constitutionality of IND.CODE 31-6-5-4 on a challenge as to the standard of evidence, stated the standard of review in constitutional challenges:

"We should also remind the parents of our standard of reviewing questions as to the constitutionality of a statute:

'In approaching a consideration of the constitutionality of a statute, we must at all times exercise self restraint. Otherwise, under the guise of limiting the Legislature to its constitutional bounds, we are likely to exceed our own. That we have the last word only renders such restraint the more compelling. We, therefore, remind ourselves that in our role as guardian of the constitution, we are nevertheless a court and not a "supreme legislature." We have no right to substitute our convictions as to the desirability or wisdom of legislation for those of our elected representatives. We are under a constitutional mandate to limit the General Assembly to its lawful territory of prohibiting legislation which, although enacted under the claim of a valid exercise of the police power, is unreasonable and oppressive. Nevertheless, we recognize that the Legislature is vested with a wide latitude of discretion in determining public policy. Therefore, every statute stands before us clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary.' "

*Matter of V.M.S., supra,* at 636, citing *Sidle v. Majors,* (1976) 264 Ind. 206, 341 N.E.2d 763.

D.H. has failed to convince us the legislation is impermissibly vague. Many instances can be found where terms as used here are held to be of sufficient clarity. We are cited to no case which held they were not. IND.CODE 31-6-5-4 and IND.CODE 31-6-4-3 must be considered in relation to each other. Upon doing so, the clarity and intent of the statute is apparent. We find no error.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.