**In the Matter of the Termination of the Parent–Child Relationship of B.R.F., Appellant (Respondent Below),**

**v.**

**ALLEN COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee (Petitioner Below).**

No. 02A03–9101–CV–15.

Court of Appeals of Indiana, Third District.

May 16, 1991.

---

Earl Raskosky, Fort Wayne, for appellant.

Kenneth R. Scheibenberger, Fort Wayne, for appellee.

STATON, Judge.

B.R.F. (Father) appeals from the trial court judgment terminating his parental rights to B.F. (Son). Father presents three issues for our review, which we consolidate and rephrase as: Whether there was sufficient evidence to satisfy the statutory elements for the termination of Father's parental rights.

We affirm.

On November 16, 1987 the Allen County Department of Public Welfare (DPW) filed a petition for Children In Need Of Services (CHINS petition) alleging that Father was unable to provide appropriate housing for his son, and that the son had resided in six (6) different locations in the course of one year. After determining that Son was a child in need of services, the trial court ordered Father to comply with the terms of a Parent Participation Plan (Plan). On December 15, 1989, the DPW filed a petition for termination of the parental relationship. On September 21, 1990, after a hearing on the matter, the court ordered that the parent-child relationship be terminated. It is from this order that Father now appeals.

A petition to terminate a parent-child relationship must allege that:

(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(2) there is a reasonable probability that:

(A) the conditions that resulted in the child's removal will not be remedied; or

(B) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(3) termination is in the best interests of the child; and

(4) there is a satisfactory plan for the care and treatment of the child.

IND.CODE 31-6-5-4(c) (Supp.1990).[1] Our courts have interpreted this provision as establishing the elements that must be proved in order to effect an involuntary termination of a parent-child relationship. *See Matter of Robinson* (1989), Ind., 538 N.E.2d 1385; *Matter of D.B.* (1990), Ind. App., 561 N.E.2d 844. Because of the magnitude of the harm resulting from an erroneous termination, these elements must be proven by clear and convincing evidence. *D.B., supra,* at 847. In considering whether the evidence is sufficient to support the judgment, this court will neither reweigh the evidence nor judge witness credibility. Only the evidence favorable to the judgment will be considered. *Alexander v. LaPorte County Welfare Dep't* (1984), Ind. App., 465 N.E.2d 223.

Father does not contend that the first element has not been satisfied; there is no dispute that Son was removed from Father for at least six months under a dispositional decree. Father does take issue, however, with the determination that there is a reasonable probability that the conditions which resulted in the child's removal will not be remedied. Father cites *Matter of Lozier* (1983), Ind.App., 453 N.E.2d 345, *trans. denied,* where our court of appeals reversed the involuntary termi-

---

1. This statute was amended in 1990. Consistent with the holdings of *Matter of Myers* (1981), Ind.App., 417 N.E.2d 926, *Washington County Dep't of Public Welfare v. Konar* (1981), Ind. App., 416 N.E.2d 1334, and *In the Matter of Miedl* (1981), Ind.App., 416 N.E.2d 491, *rev'd on* *other grounds,* we apply the present version of the statute because the order terminating parental rights in this matter was entered subsequent to the July 1, 1990 effective date of the amendments.

nation of parental rights, finding the local welfare department had not proved that the conditions which resulted in the child's removal would not be rectified. In *Lozier*, the parent showed a greater willingness to properly care for her child after her return from an eight month absence (to get her "life together"). *Id.* The evidence supporting the order focused only on conditions and events in the two months following the child's birth. This evidence was found wanting under the clear and convincing standard. *Id.*

The evidence in this case indicates that Father and Son had lived at six (6) different addresses in the course of one year. When he requested help from DPW, Father and Son were literally living on the streets. After Son had been adjudicated a child in need of services, Father did not fully complete any portion of the Parent Participation Plan except the requirement that he attend parenting classes. In 1988, Father served two months in jail for possessing stolen license plates. In 1989, Father was convicted of possessing a controlled substance and is currently incarcerated. He is scheduled to be released no sooner than October of 1991.

Based on this evidence the trial court found that, over an extended period, Father had displayed an inability to supply his child with the basic necessities of life. Such a pattern of unwillingness to confront parenting responsibilities and to cooperate with counselors—in conjunction with unchanged and unacceptable home conditions—has been held to support a finding that there exists no reasonable probability the unacceptable conditions will be remedied. *D.B., supra,* at 848; *Matter of M.J.G.* (1989), Ind.App., 542 N.E.2d 1385. Although Father underscores the evidence from the record favorable to him on this issue, it is not our function to reweigh the evidence. *Alexander, supra,* at 224. The evidence is sufficient to support the trial court determination.

■ Moreover, the evidence is adequate to support the finding that continuation of the parent-child relationship poses a threat to the well-being of the child. Father's inability to provide Son with adequate housing, along with Father's convictions and present incarceration, demonstrates this element clearly and convincingly. Furthermore, because of his status as an habitual traffic offender, Father's driver's license has been suspended for life. The trial court finding in this respect is supported by clear and convincing evidence.

■ Father also contends that termination of his parental rights is not in his son's best interests. In making the best interests determination, the trial court is required to look beyond factors identified by DPW to the totality of the evidence. *Matter of J.K.C.* (1984), Ind.App., 470 N.E.2d 88. Children are not removed from the custody of their parents because there is a better place for them, but because the situation while in custody of their parents is wholly inadequate for their very survival. *Id.* at 93.

As DPW points out, Father has a criminal record and is currently incarcerated, making it impossible for him to see to the upbringing of his son. *See Matter of Danforth* (1989), Ind., 542 N.E.2d 1330. The fact that Father's driver's license is suspended for life would make it difficult to provide for his child as well. Despite Father's assertion that other family members are willing to care for the child until Father is released from prison, the evidence is virtually uncontested that, *while Father had custody,* he was unable to provide a stable home environment including the care and supervision necessary to raise a child. There was sufficient evidence to prove clearly and convincingly that termination of the parent-child relationship was in Son's best interests.

■ Lastly, Father asserts that the Department did not adequately establish a satisfactory plan for the care and treatment of the child. As he acknowledges, however, DPW planned to place Son in a foster home and provide him with medical care and schooling. Moreover, a DPW caseworker stated her intention to transfer the case to the Adoption Division. Although Father emphasizes the caseworker's inability to recall the last time DPW

successfully placed a child of his son's age (then five years old) for adoption, this evidence does not negate the finding that DPW was able to "point out in a general sense to the trial court the direction in which its plans were going." *Miedl, supra*, at 141; *see also J.K.C., supra*, at 93. There is clear and convincing evidence to satisfy this element of the statute.

Affirmed.

RATLIFF, C.J., and GARRARD, J., concur.