UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and AtLee
Argued by teleconference


ANTHONY WAYNE EASTERLING, S/K/A
  ANTHONY WAYNE EASTERLING, JR.
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1444-19-3                      JUDGE RANDOLPH A. BEALES
                                                    AUGUST 4, 2020
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Erik L. Sapp, Assistant Public Defender, for appellant.

Kelsey M. Bulger, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Appellant Anthony Wayne Easterling was convicted of possession of a firearm after having

been convicted of a felony, in violation of Code § 18.2-308.2, and possession of a machine gun for

an aggressive purpose, in violation of Code § 18.2-290.  On appeal, he challenges both convictions,

arguing that the evidence was insufficient to show he had knowledge of the presence of the firearm.

I.  BACKGROUND

In accordance with established principles of appellate review, we view the "evidence in the

light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial

court."  Riner v. Commonwealth, 268 Va. 296, 330 (2004).  "We also accord the Commonwealth

the benefit of all inferences fairly deducible from the evidence."  Id. at 303.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On January 2, 2019, Officer C.L. Jackson of the Danville Police Department arrived at a Walmart parking lot in response to a call reporting possible shoplifting. After Jackson arrived, he observed Easterling get into the driver's seat of a black SUV in the parking lot. Approximately six minutes later, Jackson saw another individual walk to the same SUV to get in the vehicle. When a Walmart employee signaled to him that "these were the gentlem[e]n they were referring to," Jackson went to the SUV, spoke to Easterling, and had Easterling step out of the vehicle. After collecting their identifying information, Jackson discovered that the driver's licenses of both Easterling and the other individual were suspended, as the video in the record indicates. Easterling stated that the vehicle belonged to his uncle.

Officer Jackson testified that, while standing outside the vehicle, he could see "a clear magazine with firearm's rounds in the magazine" sticking out from under the driver's seat. He stated that the magazine "was sticking out where you could see it in plain view." Jackson said that upon seeing the magazine with the ammunition in it, he requested that more officers come to the scene. Officer Jackson asked Easterling if he is a convicted felon, and Easterling acknowledged that he is. Because Jackson came to the location as a result of a report of possible shoplifting, he and another officer asked Easterling on several occasions, as the video in the record shows, if they could search a Walmart bag that was plainly visible in the back seat of the SUV to see if there was a sales receipt, but Easterling would not open the SUV to retrieve the bag.

Officer Jackson testified that, after more officers arrived, he detained Easterling and placed him in his police vehicle. Jackson said that he then "went in the vehicle and retrieved the magazine" and found a firearm "directly beside the magazine." Jackson testified that the firearm was a Glock .22. Jackson also stated that the Glock had a modification, which he described as "a selector switch to switch it from semi-automatic to fully automatic." Jackson further testified that,

after he Mirandized Easterling, he asked Easterling about the firearm, and Easterling denied owning the firearm.

Officer Jackson also testified that, when he took Easterling to the magistrate, as Jackson was explaining to the magistrate about how the firearm could be switched to be automatic, Easterling asked, "How does that make a Glock fully automatic?" Jackson then asked Easterling, "How did you know it was a Glock?" (Jackson testified that up to that point in the conversation with the magistrate, he "never said the model of the firearm" and had not shown Easterling the gun.) Easterling responded that he had heard it on the police vehicle's radio. Officer Jackson conceded on cross-examination that the police radio in his vehicle was turned on and that he "most likely" told dispatch over the radio that the firearm was a Glock.

At Easterling's bench trial on the charges of possession of a firearm by a felon (Code § 18.2-308.2) and possession of a machine gun for an aggressive purpose (Code § 18.2-290), in addition to video evidence from police body cameras and Officer Jackson's testimony, the Commonwealth presented testimony and video of a test-firing of the Glock. Detective Newcomb of the Danville Police Department testified that he loaded the magazine that was retrieved with 20 to 25 rounds of ammunition and that, when he test-fired the firearm, it was fully automatic – i.e., he only had to pull the trigger one time for the firearm to fire all the rounds in the magazine. The trial court ultimately found Easterling guilty of both charges.

On appeal, Easterling challenges the sufficiency of the evidence for both charges, arguing, "The trial court erred in convicting Mr. Easterling of both charges because there was insufficient evidence to show he had actual knowledge of the presence of the firearm." He acknowledges on brief that the firearm at issue here is a machine gun.

## II. ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### A. Code § 18.2-308.2

"It shall be unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm." Code § 18.2-308.2. "A conviction for knowingly and intentionally possessing a firearm after having been convicted of a felony . . . requires proof beyond a reasonable doubt of either actual or constructive possession of the firearm." Byers v. Commonwealth, 37 Va. App. 174, 179-80 (2001) (alteration in original) (quoting Hancock v. Commonwealth, 21 Va. App. 466, 468 (1995)). "To establish constructive possession of the firearm by a defendant, the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." Smallwood v. Commonwealth, 278 Va. 625, 630 (2009) (quoting Bolden v. Commonwealth, 275 Va. 144, 148 (2008)). "While the Commonwealth does not meet its burden of proof simply by

- 4 -

showing the defendant's proximity to the firearm or ownership or occupancy of the premises where the firearm is found, these are circumstances probative of possession and may be considered as factors in determining whether the defendant possessed the firearm." Rawls v. Commonwealth, 272 Va. 334, 350 (2006).

The only issue before us is whether there was sufficient evidence that would permit a rational factfinder to find beyond a reasonable doubt that Easterling had knowledge of the presence of the firearm.[1]

The evidence in the record before us shows that, although Easterling was not the owner of the vehicle, he was in the driver's seat of the SUV – and the only person in the vehicle – when the other individual approached the vehicle from the Walmart and Officer Jackson confronted them. After Easterling got out of the vehicle and closed the door to it, he was resistant to opening a door of the vehicle again. Officer Jackson testified that, even while standing outside the vehicle, he could see sticking out from under the driver's seat, where Easterling had just been sitting, a see-through magazine, containing ammunition, "where you could see it in plain view." The magazine, which could hold at least 20 to 25 rounds of ammunition, was characterized by the trial court as "an extended magazine," which was "not a small handgun magazine." When the officer, who then knew that Easterling was a convicted felon, went to retrieve the magazine with ammunition in it, he found a Glock "directly beside the magazine" under the driver's seat.

Furthermore, when Officer Jackson was describing the firearm to the magistrate before Jackson had told the magistrate the model of the firearm, Easterling asked, "How does that make a Glock fully automatic?" In finding Easterling guilty, the trial court implicitly rejected Easterling's contention that he only knew the firearm was a Glock because of overhearing that said on the car's police radio. See Pugliese v. Commonwealth, 16 Va. App. 82, 92 (1993).

---

[1] Easterling concedes that he is a convicted felon.

In making a finding of fact, the trial court stated, "[T]he evidence that the Court heard in this case does establish that the defendant was the sole occupant of this vehicle." The court also made a finding of fact that the magazine "was visible to Officer Jackson, as soon as he opened the door." Consequently, it found that, therefore, the magazine "would have been visible to Mr. Easterling when he opened the door to get in the vehicle" and "would have been visible to Mr. Easterling as he is sitting there behind the driver's wheel." Furthermore, the evidence shows that the magazine was compatible with the Glock firearm found next to it because a detective loaded the magazine into the Glock and successfully fired the Glock.

Easterling cites to this Court's opinion in Myers v. Commonwealth, 43 Va. App. 113 (2004), in support of his argument that his convictions should be overturned. In that case, Myers was in the passenger seat of a vehicle whose driver fled after a high-speed car chase. The officer who searched the vehicle found "a lot of garbage in the floor board" of the vehicle, as well as a revolver "wrapped in a blanket on the front floorboard." Id. at 117. The firearm was not registered to Myers or the driver. Id. The officer also found a pistol lying approximately sixty feet from the driver's side of the vehicle. Id. The trial court convicted Myers of being a felon in possession of a firearm as well as grand larceny, based on the finding of his possession of the pistol found outside of the vehicle. Id. at 116-17. This Court reversed, finding, "The Commonwealth here presented no evidence that appellant knew the weapon was hidden in the blanket" or knew of the pistol found outside the vehicle. Id. at 122.

The case now before us is easily distinguishable from Myers. Here, as the trial judge noted, Easterling was the sole occupant of the vehicle after Officer Jackson arrived, until his friend emerged from the Walmart and was apparently preparing to enter the vehicle when the police approached it. In Myers, on the other hand, there were two individuals in the vehicle when the police stopped it. More importantly, in this case, a magazine that was compatible with the firearm –

- 6 -

and right next to it – was in plain view sticking out from under the driver's seat. Conversely, in Myers, one weapon was wrapped in a blanket amid "a lot of garbage" in the vehicle, and another was sixty feet away from the vehicle.

In light of the totality of this evidence, we cannot say that no rational factfinder could find that Easterling had knowledge of the firearm. To the contrary, a rational factfinder could reasonably infer that Easterling had knowledge of the magazine in plain view that was sticking out from under the driver's seat, upon which he was seated, and knew of the firearm located directly next to it.

### B. Code § 18.2-290

Code § 18.2-290 criminalizes the "[u]nlawful possession or use of a machine gun for an offensive or aggressive purpose." Code § 18.2-288(1) defines "Machine gun" as "any weapon which shoots or is designed to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." Code § 18.2-291 establishes, "Possession or use of a machine gun shall be presumed to be for an offensive or aggressive purpose . . . [w]hen empty or loaded shells which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof." Easterling does not challenge the trial court's finding that the Glock was a machine gun, nor does he challenge the trial court's finding of an aggressive purpose. The only element he challenges is the sufficiency of the evidence "to show he had actual knowledge of the presence of the firearm."

Code § 18.2-292 establishes, "The presence of a machine gun in any room, boat or vehicle shall be prima facie evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found." After the Commonwealth makes a prima facie showing like the one here (i.e., that the machine gun was in the vehicle), that inference (i.e.,

that Easterling possessed the firearm) may be rebutted by the defendant.[2] See Crenshaw v. Commonwealth, 219 Va. 38, 42 (1978) (holding that, for a statutory presumption to meet due process requirements, the presumption must be rebuttable). See also Cty. Court of Ulster Cty., N.Y. v. Allen, 442 U.S. 140, 157 (1979); Kim v. Commonwealth, 293 Va. 304, 316 (2017).

As discussed *supra*, we cannot say that no rational factfinder could find that Easterling had knowledge of or possessed the firearm. In light of the fact that the evidence is sufficient to show Easterling possessed the Glock for purposes of a conviction pursuant to Code § 18.2-308.2, the evidence is likewise sufficient to show that Easterling possessed the firearm for purposes of Code § 18.2-290. The trial court's finding of possession applies to both statutes, and the evidence here is sufficient to prove possession of a firearm even without the rebuttable inference present in Code § 18.2-292. In short, the evidence is sufficient without the rebuttable inference but is only further strengthened when such a rebuttable inference applies.

The Commonwealth presented evidence that the firearm was in the same vehicle which Easterling occupied. Indeed, the evidence established that it was under the driver's seat in which Easterling was seated. Given the "dangerous and unusual" nature of machine guns (especially with such a long magazine like the one here that could hold at least 20 to 25 rounds of ammunition), it is extremely likely that an individual occupying a vehicle in which a machine gun is found would know of its presence and nature. United States v. Fincher, 538 F.3d 868, 874 (8th Cir. 2008). See also In re Jorge M., 23 Cal.4th 866, 878 (2000). Easterling – whose theory of defense was that he was unaware of the firearm and only overheard the model over the police car radio – did not sufficiently rebut the inference under Code § 18.2-292 that he possessed the machine gun.

---

[2] At oral argument before this Court, appellant's counsel stated that he was only challenging the sufficiency of the evidence – not the constitutionality of Code § 18.2-292 if the inference or "presumption of possession in [Code §] 18.2-292 is deemed to be a rebuttable presumption."

### III. CONCLUSION

In short, Easterling does not dispute that the firearm is a machine gun or that he is a convicted felon, but he does contest that he had knowledge of the firearm so as to have possession of it. The evidence, however, shows that Easterling, who was seated in the driver's seat, was the sole occupant of the vehicle after the police arrived (although another man leaving the Walmart store approached the vehicle apparently to enter it as the police also approached). In that vehicle, an extended clear magazine loaded with ammunition was visible to Officer Jackson sticking out from under the driver's seat "where you could see it in plain view." Upon searching the vehicle after determining that Easterling was a convicted felon, Officer Jackson found a Glock .22 "directly beside the magazine." The Glock had been modified with "a selector switch" that allowed it to be switched "from semi-automatic to fully automatic." Later, when Officer Jackson was describing the firearm to the magistrate, before Jackson had mentioned the model of the firearm, Easterling asked, "How does that make a Glock fully automatic?" Given the totality of all of this evidence, we cannot say that no rational factfinder could find that Easterling had knowledge of the firearm and that he possessed it.

Consequently, we affirm Easterling's convictions for possession of a firearm after having been convicted of a felony under Code § 18.2-308.2 and for possession of a machine gun for an aggressive purpose under Code § 18.2-290.

Affirmed.